STATE v. MARSHALL KNIGHT, Appellant.—No. 40496.—206 S. W. (2d) 330.

Division One, November 10, 1947.

*Eugene M. Munger* for appellant.

1234

J. E. Taylor, Attorney General, and Will F. Berry, Jr., Assistant Attorney General, for respondent.

VAN OSDOL, C.—Defendant appeals from a judgment and sentence of twenty-five years imprisonment upon conviction of murder in the second degree.

Defendant fatally shot one Mearle Hale with a 38-Special revolving pistol. The homicide occurred at about two o'clock in the morning of July 15, 1944. Defendant was a police officer in the City of Sikeston; and Mearle Hale was a member of a street maintenance crew of seven employed by the city and then engaged in repainting the "parking lines" on pavements in the city. The work was being done under the supervision of Lawrence Ables, Street Commissioner.

Very early in the morning of July 15th, the men of the maintenance crew, while engaged in their painting work, saw an automobile belonging to the city (the automobile was used by defendant and

others of the police force) parked in the shadow of a sycamore tree near the American Legion Park in Sikeston. Some of the members of the crew approached the automobile and, by the light of a match, saw a young woman, commonly called "Doodle," lying asleep in the front seat of the car. At this time defendant hurriedly approached and demanded, "What the God damn hell are you fellows doing around this car?" Defendant then entered the automobile and, taking the young woman with him, drove away in the direction of the jail. He later returned and stopped his car (headed west) a little east and south of the place where the men of the maintenance crew were working.

According to the testimony of Lawrence Ables, defendant "drove up . . . and stuck his head out the north side of the car, and he said, 'Lawrence, don't you believe I locked that woman. up?' I said, 'I don't know what you done with her. It is none of my business.' . . . He said, 'I know God damn well I did.' Mearle Hale said, 'You might have locked her up, but you were a hell of a long time doing it,' And he (defendant) opened the car door and said, 'You are a God damn liar' and struck Mearle and knocked him down . . . and jumped on him. . . . I jumped on and grabbed his wrist to keep him from hitting him any more. . . . I held to him, and Sherman (another of the painting crew) got hold of him . . . and Mearle worked out from under him . . . and Mearle started around the car (away from defendant) sideways to him. . . . He (defendant) pulled his gun and shot him. . . . Mearle started on around the car. It never knocked him down. He gave a whoop and kept going around the car, and Knight acted like he was going to shoot him again."

Defendant relied upon the law of self-defense. It was his testimony that deceased struck the first blow with a gauging or marking stick (a board about 16 feet in length; 1 ½ inches in width; and ¾ of an inch in thickness, customarily used by the maintenance crew in gauging the parking lines for painting). The board was apparently broken in the course of the affray; the insignia on defendant's cap was bent; and the cap's visor torn away. Defendant testified that, in the encounter between himself and deceased, others of the maintenance crew "ganged" defendant, putting him in fear of great bodily harm; and that he "just up and shot" without an intention to kill.

Defendant contends the trial court erred in denying defendant's application for a continuance based on the stated ground defendant's attorney was a member of the House of Representatives of the 63d General Assembly and "in actual attendance on said House"; and in resetting the cause for trial without setting aside a previous order of continuance. (One of defendant's counsel, at that time, was Hon. George Munger, Representative of Stoddard County.) De-

fendant further assigns errors of the trial court in permitting the prosecuting attorney to state, in his opening statement, his intention to prove an act of illicit sexual intercourse of defendant with the girl, Doodle, which act according to Doodle's testimony occurred about three weeks prior to the homicide; and in permitting the introduction of testimony of the illicit relation.

The record discloses the cause was tried April 29-30, 1946. We notice the 63rd General Assembly recessed from April 2, 1946, to May 6, 1946; and, since the dates of the trial were, as stated, April 29th-30th, the trial was had during a "recess for twenty days or more of the general ▆▆▆ assembly," and "ten days" or more after the beginning of the recess of "twenty days or more." So the trial was had during a recess of the General Assembly and at a time permitted by statute. See Section 96, Civil Code of Missouri, Laws of Missouri, 1943, pp. 383-4. Moreover, the affidavit in support of the application for a continuance was insufficient. The affidavit stated but the conclusion that counsel's "attendance upon the trial of said cause is necessary to a fair and proper trial thereof." It is held the meaning of Section 96, supra (in saying a party has sufficient cause for a continuance "if it shall appear to the court .. . . that the attendance of . . . counsel is necessary to a fair and proper trial") necessarily must be that the affidavit must state facts which would support such a finding and from which the court could reach such a conclusion. Kyger v. Koerper, 355 Mo. 772, 207 S. W. 2d 46.

▆ But defendant contends the Section 96, Civil Code of Missouri, supra, is invalid because violative of constitutional provisions, "No bill shall contain more than one subject which shall be clearly expressed in its title . . ." Section 23, Article III, Constitution of Missouri, 1945; and see Section 28, Article IV, Constitution of Missouri, 1875. Defendant argues the title of the Civil Code of Missouri, Laws of Missouri, 1943, page 353 et seq., does not show the Legislature, in enacting the Code, was "legislating or attempting to legislate concerning criminal matters." While defendant, in his suggestions to the trial court in opposition to the trial setting and in support of the application for a continuance, urged Section 96, supra, was in violation of the Constitution of 1875, he failed to preserve the question in his motion for a new trial. A motion for a new trial must set forth in detail and with particularity the specific grounds therefor. Section 4125 R. S. 1939, Mo. R. S. A. sec. 4125. Assignments of error not preserved by the motion for a new trial are not open for review upon appeal. State v. Wynne, 353 Mo. 276, 182 S. W. 2d 294, and cases therein cited. As in the case of other contentions of error, a question sought to be raised at the trial relating to the constitutionality of a statute but which question is not set forth in detail and with particularity in the mo-

tion for a new trial must, upon appeal, be disregarded. State v. Gibson, Mo. Sup., 300 S. W. 1106; State v. Fox, Mo. Sup., 300 S. W. 820. See also State v. Powers, 350 Mo. 942, 169 S. W. 2d 377.

In the motion for a new trial defendant specifically assigned that Section 96, supra, is violative of or inconsistent with the Constitution of 1945; however, we rule the contention adversely to defendant who, in this case, is not in a position to question the validity of the Section. The Civil Code of Missouri (and Section 96 thereof which has not been repealed or amended) became effective January 1, 1945. Section 3, Civil Code of Missouri, Laws of Missouri; 1943, p. 357. The action of the trial court in denying the application for a continuance occurred in April 1946. By virtue of Section 2 of the Schedule of the 1945 Constitution, all laws in force at the time of the Constitution's adoption ("unless sooner repealed or amended to conform with this Constitution") remained in force and effect until July 1, 1946, even though "inconsistent with this Constitution." Section 2, Schedule, Constitution of Missouri, 1945; State ex rel. Allison v. Barton, 355 Mo. 690, 197 S. W. 2d 667.

March 1, 1945, the trial court had made an order continuing the case, "until the adjournment of the legislature and for a period of ten days thereafter." It seems that no formal order was made vacating or setting aside such continuance; however, the judge of the trial court notified counsel for defendant that the cause was to be set for trial on April 13, 1946; and, on that date, defendant's counsel filed and the trial court considered and refused an application for a continuance. And again, April 16, 1946, the trial court further considered defendant's application for a continuance and his amended suggestions in opposition to setting the case for trial. The trial court denied the continuance, and ordered "that the case be and is set down for trial on Monday April 29th, 1946." As we have said, defendant assigns error of the trial court in setting the case for trial without vacating or setting aside the order of continuance of March 1, 1945. Here, again, defendant did not specifically preserve the exception in his motion for a new trial. As the Legislature has said, a motion for a new trial must set forth in detail and with particularity the specific grounds therefor. Section 4125, supra.

In view of the evidence developed in the course of the trial, it seems clear to us the trial court did not err in permitting the prosecuting attorney to state, in his opening statement, his intention to prove defendant's prior illicit act with the young woman, Doodle; nor did the court err in admitting testimony of the relation. It is a basic rule of evidence that if testimony is logically relevant it should be admitted, unless forbidden by some one of the exclusionary rules. On the other hand, evidence which is irrelevant, upon proper objection, should be excluded. Vol. 2, Jones Commentaries on Evi-

dence, 2d Ed., sec. 587, pp. 1083-1084; Vol. 1, Wigmore on Evidence, 3d Ed., secs. 9-10, p. 289 et seq.; 31 C. J. S., Evidence, sec. 158, p. 864; Godsy v. Thompson, 352 Mo. 681, 179 S. W. 2d 44. ''Generally, it may be said that any legally competent evidence which, when taken alone or in connection with other evidence, affords reasonable inferences upon the matter in issue, tends to prove or disprove a material or controlling issue or to defeat the rights asserted by one or the other of the parties, and sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical inference with respect to the principal fact in issue is relevant and admissible.'' 20 Am. Jur., Evidence, sec. 247; and Vol. 2, Jones Commentaries on Evidence, 2d Ed., sec. 590, pp. 1089-1091.

The previous relation of defendant with the young woman, considering the facts and circumstances of the homicide, had a reasonable and logical bearing upon the issue of defendant's malicious intent, an essential element of the crime charged. She had been present at the park prior to the homicide and, soon thereafter and in related sequence, it was of and concerning the young woman and defendant that defendant and members of the painting crew (including deceased) were speaking in the conversation which immediately preceded and led up to the homicide. The testimony tended to explain defendant's return to the place where the deceased and others of the maintenance crew were working. It·explained defendant's voluntary announcement that he had taken the woman to the jail. It threw light on his anxious inquiry of the Street Commissioner, Ables; and on defendant's anger consequent to deceased's remark, ''You might have locked her up, but you were a hell of a long time doing it.'' Consequently, the testimony was relevant and, in our opinion, admissible as tending to show defendant's state of mind and intent accompanying his act in firing the fatal shot.

We have found no error in the record. The judgment and sentence should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.