**STATE of Missouri, Respondent,**

v.

**Vernon L. BOWENS, Appellant.**

No. 56145.

Supreme Court of Missouri,
Division No. 2.

Feb. 22, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Charles A. Gallipeau, Kansas City, for appellant.

HOUSER, Commissioner.

This is an original appeal by Vernon L. Bowens, who was convicted by a jury of first degree murder and sentenced to life imprisonment.

Appellant asserts error in excluding from the jury panel without challenge by the State and over defense objections all persons who indicated that they did not believe in capital punishment or who stated that they had scruples concerning its infliction, because (a) the jury as composed was not representative of the community due to the systematic, intentional and discriminatory exclusion of qualified persons from the panel, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 10, Constitution of Missouri 1945, V.A.M.S., and (b) the jury as composed was biased in favor of convicting appellant.

The State announced at the beginning of the trial that the death penalty would be sought. On voir dire examination, in answer to the question whether they believed in capital punishment, eight members of the venire answered negatively and were excused from jury service. Six others were excused when they answered affirmatively the question: "Does any member of this panel have a moral, conscientious or religious scruple which would make it impossible for you to bring in a verdict of death in a proper case if you were convinced beyond a reasonable doubt that such a verdict was fair and just?" Another who did not believe that he could "vote for death" was ordered to stand aside. All fifteen were excused on the court's own motion, without challenge by the State, and over the objections of appellant.

Citing § 546.130, RSMo 1969, V.A.M.S.,[1] appellant contends that the questions asked were prejudicially ambiguous, misleading, improper and misstated the law; that the term "verdict of death" in the second question made the finding of a verdict of guilt synonymous with the assessment of punishment; complains that the court did not attempt to ascertain whether the opinions of the fifteen came within the statutory language, i. e., whether their opinions were "such as to preclude them from finding the defendant guilty of an offense punishable with death"; that no statute restricts eligible jurors to those persons who believe in capital punishment or have no scruples against infliction of the death penalty, but that is the requirement established in this case.

Appellant relies upon a quotation from Witherspoon v. Illinois, 391 U.S. 510, 515, 88 S.Ct. 1770, 1773, 20 L.Ed.2d 776, 781, to the effect that it cannot be assumed that a juror who describes himself as having conscientious or religious scruples against the infliction of the death penalty in a proper case thereby affirms that he could never vote for it or would not consider doing so in the case before him; that unless the prospective juror "states unambiguously that he would automatically vote against the imposition of capital pun-

1. "Persons whose opinions are such as to preclude them from finding any defendant guilty of an offense punishable with death, shall be ineligible to serve as jurors on the trial of an indictment or information charging any such offense, * * *."

ishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." Witherspoon v. Illinois, in which the death penalty was inflicted, does not govern cases in which the jury fixes the punishment at life imprisonment or a term of years. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, specifically so held, and we have reiterated this ruling many times. State v. Richards, Mo.Sup., 467 S.W.2d 33 [2]; State v. Quinn, Mo.Sup., 461 S.W.2d 812, 814–815; State v. Franklin, Mo.Sup., 459 S.W.2d 314 [4]; State v. Coyne, Mo.Sup., 452 S.W.2d 227 [2]; State v. Pollard, Mo.Sup., 447 S.W.2d 249 [2]. These cases reject the constitutional argument advanced by appellant and there is no need to repeat their reasoning and analysis.

■ Appellant further contends that on the issue of guilt "death-qualified jurors" are "partial to the prosecution," on the basis of certain surveys cited by petitioner in Witherspoon, a law review article stating that a jury qualified on the death penalty "will necessarily have been culled of the most humane of its prospective members," and other theoretical data. Appellant introduced no evidence in support of his claim that a jury selected as this one was selected is partial to the prosecution. As did the Supreme Court of the United States, we consider the surveys as "too tentative and fragmentary" and the other data submitted as insubstantial. Witherspoon v. Illinois, supra; Bumper v. North Carolina, supra; State v. Quinn, supra, 461 S.W.2d, l. c. 815 [1].

■ For his second point appellant charges that the evidence was insufficient to establish all the elements necessary for a conviction of murder first degree; that he performed no act which caused the death in question; that merely driving his automobile to the scene, his presence at the time the crime occurred and remaining there thereafter is insufficient to incriminate him; that there is no evidence that he perpetrated or assisted in the perpetration of the crime or aided, abetted, assisted, conspired, incited or encouraged others in its commission. Appellant further questions the sufficiency of the evidence to prove an agreement between defendant and another to kill decedent.

The contentions are wholly without merit. Appellant made an oral and written confession, shown to have been voluntarily given, after proper warnings. The confession was admitted in evidence. Salient facts recited in the confessions were corroborated by other witnesses. From all of the evidence the jury could have found these facts:

Herman Haney was shot in the head and killed by a .38 calibre bullet from a pistol fired by one Williams. For years appellant and Haney had lived near each other in Kansas City. Former friends, they fell out, got to "bothering" each other, and threatened each other's lives. About October 1, 1969, they got into difficulties over the drinking of some wine, at which time Haney, who carried a knife with a 3–4 inch blade, stabbed or cut appellant's arm. Haney claimed that appellant had tried to shoot him. Appellant threatened to kill Haney because of that incident. Haney feared appellant; he was "scared" of him. Appellant told others that he and Haney were having trouble and that he was going to start carrying his pistol and "take care of Haney." Appellant owned a .38 calibre pistol. On October 31, 1969 appellant and one Fuller were sitting in appellant's parked automobile when Haney approached him and told appellant to "get away" and "stay away" from "this Hill" (the area where Haney lived) and threatened to kill defendant if he caught him there again. This "spooked" appellant, who drove home, got his pistol and returned. Fuller and appellant then bought a quantity of wine. While they were drinking the wine a man named Williams joined them and they were drinking together when appellant began to cry. Williams asked why he was crying. Appellant told him he was tired of Haney "f——ing with him." Williams did not

know Haney. When Haney was described to him Williams asked where Haney was, wanted them to show Haney to him, and stated "I'll fix him." More wine was obtained and consumed by the three. On the way to the liquor store appellant saw the lights on at Haney's house. Williams told appellant that he would kill Haney and that it would cost him $35 out of his upcoming pay check and $35 out of next month's pay check. When they came back towards the Hill appellant noticed that Haney's lights were off but he figured Haney was at home. Appellant stopped his car a quarter to half block distant from Haney's house, gave Williams his loaded pistol, remained in the car and observed Fuller and Williams as they approached Haney's house. Appellant admitted in his confession that Fuller was "supposed" to call Haney out of the house and Williams was "supposed" to shoot Haney. Fuller (who was also charged with murder) explained his presence by stating that appellant owed Haney a debt; that the parties thought they could smooth things over between appellant and Haney by payment of the debt; that Williams offered to take the money to pay Haney and Fuller went along to make contact with Haney, who was not known to Williams. In any event Fuller and Williams went to Haney's house, Fuller called to Haney through a window, and Williams shot Haney point-blank at close range when Haney opened the door. Appellant heard two gunshots. After the deed was done Williams and Fuller ran back to appellant's car, which was waiting. Appellant, who was nervous, said to Williams, "Man! Did you kill him?" According to Fuller Williams answered, "Yes, he's dead." According to appellant Williams answered, "I shot him dead through the head, man; you ain't got nothing to worry about," and that Williams said he made sure he shot him in the head "with the first one and in the chest with the other one." Williams had the gun when he returned to the car, and that was the last time appellant saw his gun. Williams then told appellant and Fuller that they would "get the same thing"

if either opened his mouth; and that if Williams went to the penitentiary on account of them telling the truth one of his sixteen brothers would "do the job" for him. Williams told appellant that if he did not pay he would "burn" him. Later that night appellant called the police and reported that his pistol had been stolen. Asked at the trial whether he paid Williams any of the $70 for killing Haney, appellant answered that he did not give it to Williams directly because he was arrested that same night, but that later he saw Fuller, gave Fuller $35 and told him to give the money to Williams. According to Fuller, after the shooting appellant asked Williams how much he owed him and said, "I know I got to pay you something"; Williams said he would charge him $35 now and $35 next month out of his monthly pension; that on November 2, 1969 appellant received and cashed his check, handed Fuller $35 to give to Williams, and Fuller delivered the money to Williams' home, taking a receipt to give to appellant.

This evidence, which is but a brief rescript, together with the other evidence given at the trial, clearly entitled the jury to find that appellant contracted with Williams to kill Haney, and that pursuant to the agreement Williams killed Haney under circumstances constituting murder in the first degree. It demonstrates that appellant agreed to pay Williams a $70 fee to kill Haney, drove the killer to the scene, provided him with a pistol, consented to an arrangement in advance whereby Fuller would induce Haney to open the door and identify Haney, whereupon Williams would kill Haney, and that through Fuller appellant paid Williams $35 for the act and got a receipt. Under these facts appellant is as liable criminally for this death as if he had personally pulled the trigger. *Qui facit per alium facit per se.*

■■ Finally, appellant asserts that the trial court erred in denying to appellant the opportunity to raise defenses otherwise available to him by granting a protective order to the State and by its failure to guide

the jury fairly by its instructions. This assignment of error fails for two reasons. First, it is too general to merit consideration. State v. Washington, Mo.Sup., 364 S.W.2d 572, 576 [13]. Secondly, appellant failed to raise these points in his motion for new trial and attempts to raise them for the first time in his brief on appeal. Points not assigned as error in the motion for new trial are not preserved for appellate review. State v. Rowden, Mo.Sup., 452 S.W.2d 210; State v. Nolan, Mo.Sup., 423 S.W.2d 815; Criminal Rule 27.20(a), V.A. M.R.

The judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and SHANGLER, Sp. J., concur.