STATE of Missouri, Respondent,

v.

Walter William KENNEDY, Appellant.

No. 34947.

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 23, 1974.

Motion for Rehearing or Transfer Denied
Sept. 11, 1974.

Application to Transfer Denied
Oct. 14, 1974.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Chief Atty. Gen., Dan Summers, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Asst. Circuit Atty., St. Louis, for respondent.

David M. Adams, Public Defender, James C. Jones, Asst. Public Defender, St. Louis, for appellant.

CLEMENS, Judge.

Defendant Walter William Kennedy appeals his convictions for assault with intent to kill and first-degree robbery.

At trial the state introduced evidence of Kennedy's two prior convictions for uttering forged instruments. A deputy circuit clerk testified Kennedy had pleaded guilty to both charges and was·sentenced to two concurrent ten-month terms. The warden of the City Workhouse testified Kennedy had served his time there. Consequently, the trial court found defendant had been convicted of two previous felonies, served his sentences and was discharged.

A jury could have found that on the evening of December 18, 1971 the victim, Carl Borns, stopped on his way home to help two men push their stalled car to a nearby service station. After the car was repaired Borns asked for a ride and left with the two men, who introduced themselves as Kennedy and Rodriquez. While en route they said they had to stop at their apartment and invited Borns inside. He followed them into the building and up the stairs where Kennedy drew a gun, hit Borns with it and ordered him to remove his coat, watch and wallet. While Borns was doing so Kennedy shot him in the leg.

After taking Borns' possessions Kennedy and Rodriquez drove him to a place behind some factories in North St. Louis. They commanded him to get out of the car and as he alighted Kennedy shot him in the jaw. He was shot several more times in rapid succession, bullets striking him in the upper back, buttocks, the back near the

spine and in the knee. Both assailants then drove away and Borns managed to crawl to a nearby service station where police were called.

Borns gave information resulting in the prompt arrest of defendants Kennedy and Rodriquez at their apartment. One of the service station attendants positively identified defendant at the police station, as did Borns from his hospital bed the next morning. Both made similar identifications at trial.

The jury found defendant guilty on both counts and the court assessed punishment in accordance with the Second Offender Act, § 556.280, RSMo 1969, V.A.M.S. Defendant's motion for a new trial was overruled and the court entered judgment, sentencing him to consecutive terms of one hundred years for assault with intent to kill and seventy years for first-degree robbery.

Defendant raises five points for review. First, he contends the admission of certain hospital records was error since they were not properly identified and qualified. Second, he objects to the admission of certain testimony because it was irrelevant. Third, he asserts the testimony of three witnesses was hearsay. As noted *post* these points are not properly preserved for review, but we have elected to consider them. In his two other points defendant argues the trial court erred in assessing punishment and challenges the validity of the sentences imposed.

In his first point defendant contends state's witness Captain Clarence Smith was not responsible for custody or maintenance of hospital records showing Borns' gunshot wounds about which the witness testified, and that this is a prerequisite for admission under the Business Records Act. RSMo 1969, §§ 490.660–490.690, V.A.M.S. In addition, defendant argues that witness Norma Snowden, though qualified to identify those hospital records of which she had charge, was not capable of testifying as to the mode of preparation or the

time of the making. According to the defendant this disqualified the records for admission.

We find defendant's first point is not reviewable because it was not raised either at trial or in defendant's motion for a new trial. State v. Bowens, 476 S.W.2d 495 (Mo.1972). But even if the hospital records were improperly admitted we find no prejudice. The facts about the wounds inflicted were established by other witnesses and any error in admitting the evidence is not prejudicial. Kelly v. Terminal Railroad Ass'n of St. Louis, 315 S.W.2d 699 (Mo.1958).

Defendant's second point is that the testimony of Charles Crank—one of the two filling station attendants on the night of the robbery—was irrelevant since Crank could not identify defendant at trial and therefore his testimony should have been stricken. This point is not reviewable; it was not set out in defendant's motion for a new trial and therefore was not preserved. State v. Bowens, supra.

Crank's testimony however did not lack relevance. He was one of two persons who had seen the three men together. He identified the car Borns said was the one used in transporting him. Crank testified as to the general description of defendant and Rodriquez, including relative height and build; he described defendant's clothing. Although Crank could not positively identify Kennedy at trial, Crank's testimony was corroborative of other primary evidence. "The relevancy of evidence in a legal proceeding depends upon whether the fact '. . . tends to prove or disprove a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue.'" State v. Walden, 490 S.W.2d 391 (Mo.App.1973); State v. Knight, 356 Mo. 1233, 206 S.W.2d 330 (1947). Crank's testimony was not irrelevant and deciding its weight was for the jury.

In point three defendant contends the testimony of witnesses describing his

identification by Carl Borns at the hospital confrontation was hearsay. Again, the question is not reviewable since it was not raised at the trial nor in the motion for a new trial. State v. Bowens, supra.

Appellant relies upon State v. Degraffenreid for the proposition that testimony by a witness describing the extrajudicial identification of a defendant by a third person is to be excluded as hearsay. We have considered that case and find it differs factually from our case. In contrast to *Degraffenreid* the facts here disclose strong primary evidence of defendant's identification by Borns and one gas station attendant both before trial and in the courtroom. It cannot be said, as it was in *Degraffenreid,* that the hearsay testimony was such as to "tip the scales against [the] defendant." State v. Degraffenreid, 477 S.W.2d 57, l.c. 64 (Mo. banc 1972). We find here the challenged testimony was cumulative and harmless.

■ As his fourth point defendant asserts it was improper for the court to assess punishment invoking the Second Offender Act because the requisites for applying that Act were not met. According to State v. Blackwell, 459 S.W.2d 268 [3], (Mo. banc 1970), three factors must be proven to support application of the Act: " . . . that defendant was *convicted* of a prior offense punishable by imprisonment in the penitentiary; that he was *sentenced* therefor; and that he was subsequently *placed on probation, paroled, fined or imprisoned therefor.*" Defendant challenges only the first criterion.

■ Specifically, he purports to distinguish between imprisonment in the City Workhouse and imprisonment in the penitentiary. His imprisonment for two prior forgery offenses having been spent in the City Workhouse, defendant now contends the trial court was precluded from assessing punishment under the Second Offender Act. "Punishable by imprisonment in the penitentiary" is a term of art synonymous with the term "felony," and the use of that

phrase is merely a legislative indication that the Second Offender Act applies only where the previous conviction was for a felony. State v. Myers, 470 S.W.2d 803 [1–3] (Mo.App.1971).

■ According to statutory definition forgery constitutes a felony, RSMo § 561.011, V.A.M.S., the penalty for which is "imprisonment in the penitentiary for a term of not less than two years nor more than ten years or by imprisonment in the county jail for a term of not more than one year or by fine . . . or by both . . ." Defendant's forgery offenses were punishable by imprisonment in the penitentiary. The fact that his sentence was not served there did not prevent application of the Act. "The dispositive factor . . . is the offense committed and not the correctional institution . . . involved." State v. Sykes, 478 S.W.2d 387[4, 5] (Mo. 1972).

Finally, defendant challenges the imposition of consecutive sentences and also alleges the terms were excessive.

■ Section 546.480, RSMo 1969, V.A.M.S., provides that "when any person shall be convicted of two or more offenses, before sentence shall have been pronounced upon him for either offense, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior conviction." The Missouri Supreme Court has declared the statute mandatory and, when applicable, the sentencing court is without authority to impose concurrent terms. King v. Swenson, 423 S.W.2d 699[17] (Mo. banc 1968); Neighbors v. State, 496 S.W.2d 807[2] (Mo.1973). The trial court did not err in imposing consecutive sentences.

■ The one-hundred-year term for assault with intent to kill was within statutory limits. RSMo § 559.180, V.A.M.S.; Crump v. State, 462 S.W.2d 809[2] (Mo.

banc 1971). The penalty of seventy years for first-degree robbery was also within permissible limits. RSMo § 560.135, V.A. M.S.; Garrett v. State, 486 S.W.2d 272[4–6] (Mo.1972). A sentence within statutory limits is not, as a matter of law, excessive or cruel and unusual. Garrett v. State, supra. This is particularly so when brutality accompanies the offense, as it does here. A long sentence is appropriate and consequently the punishment imposed was not erroneous. State v. Agee, 474 S.W.2d 817[14] (Mo.1971).

Judgment affirmed.

SMITH, P. J., and GUNN, J., concur.

McMILLIAN, J., concurs in separate opinion.

McMILLIAN, Judge (concurring).

While I concur in the results reached as to the determination of guilty, I do not concur in either penalty assessed. Nor can I accept, without doing a disservice to the court, the public, and the defendant, the regurgitation of an overworked cliche that a sentence fixed within statutory limits is not excessive or cruel and unusual. If such an assumption was ever valid, it would seem that in the enlightened self-interest of society it should be given its long overdue burial. Moreover, any sentence of such a length which is neither necessary to protect the legitimate ends of society nor useful in terms of rehabilitation is not only excessive but also wasteful of tax dollars and limits resources available to correctional authorities.

I would strongly urge my brethren to consider and adopt the ABA Standards on Appellate Review of Sentences—to the end that our court may:

"1.2 . . .

"(i) . . . correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

"(ii) . . . facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

"(iii) promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

"(iv) promote the development and application of criteria for sentencing which are both rational and just."

In the ABA Standards, Sentencing Alternative and Procedures, Comments § 2.-1(f), p. 57, it is reported that the most recent available statistics reveal "[M]ore than one-half of the adult felony offenders sentenced to State prisons in 1960 were committed for maximum terms of five years or more; almost one-third were sentenced to terms of at least ten years. And more than one-half of the prisoners confined in State institutions in 1960 had been sentenced to maximum terms as high as ten years." In England sentences in the range of twenty to thirty years "are now entirely exceptional . . . and are generally disapproved." Comment, 4 British J.Crim. 608 (1964). Sentences in excess of five years are rare in most European countries. See Johnson, Crime, Correction and Society 409 (1964).

The Amer. Law Institute's Model Penal Code (P.O.D.1962) provides sentences for ordinary terms and extended terms—ordinary terms, except in capital offenses, range from 1 year to 10 years; whereas, for extended terms, from 1 year to 20 years. The National Council on Crime and Delinquency's Model Sentencing Act (1963) provides for ordinary offenders—no minimum and up to 10 years, except murder first degree which carries a penalty of life; and dangerous offenders, no minimum, up to 30 years. In extreme cases the ABA Standards, Sentencing Alternatives and Procedures, § 3.1(c)(i) provides for a twenty-five year maximum.

In my opinion, a good sentence should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Stated another way, the best correctional system should attempt to divert as many offenders as possible out of the system; or, those offenders found to be in need of correctional processes or therapy should be detained for the minimum time possible; or, those offenders found to be dangerous should be held on to as long as possible, but not in excess of thirty years.

In the instant case, I would affirm the conviction, but reverse and remand the case for a hearing on the sentencing aspects. And I would require the trial judge to make findings as to whether or not the defendant is a dangerous offender, or persistent offender, or a professional criminal —and to set forth his reasons for the particular sentence to be imposed, not in excess of thirty years. See Model Sentencing Act, supra, Article III, §§ 5 and 6.