STATE of Missouri, Plaintiff-Respondent,

v.

Johnny JOHNSON, Defendant-Appellant.

No. 9999.

Missouri Court of Appeals, Springfield District.

June 10, 1976.

**74**

James A. DeReign, DeReign & DeReign, Caruthersville, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

STONE, Judge.

Johnny Johnson, charged with two counts of first-degree robbery by means of a dangerous and deadly weapon, was convicted on both counts by a jury which assessed his punishment on each count at five years' imprisonment. §§ 560.120 and 560.135, RSMo 1969, V.A.M.S.; Rule 24.04, V.A. M.R.; State v. Johnson, 499 S.W.2d 371, 373 (Mo.1973). Following presentation and denial of defendant's motion for new trial and the granting of allocution, sentences and judgment were rendered pursuant to the verdicts and the court ordered that the sentences run consecutively.

During the early evening of October 30, 1974, Miss Carolyn Mitchell, the clerk on duty, and Leonard Smith, a regular customer who "came by every night and bought cigars and . . . a newspaper," were the only two persons in the Sportster Liquor Store in Caruthersville, Missouri, when two men entered and walked to the counter, where each asked the clerk for a package of chewing gum. As she was handing the gum to them, a third man entered, "pulled a pistol and said, '[t]his is a stick-up,'" and "they" ordered the clerk and the customer to lie down on the floor and then proceeded to appropriate the contents of the cash register aggregating approximately $500 and to take customer Smith's billfold and some $50 therein. When one of the robber trio said "somebody is coming," they ran. However both clerk Mitchell and customer Smith remained on the floor until the robbers had "time to get away" and the clerk had "crawled over and closed the big door and locked it." Then, so Smith declared upon trial, "I run down to my place [apparently a nearby used car lot] to get my car, and I tried to follow them but they were too far gone then." The robbery was promptly reported to the Caruthersville police about 8:00 P.M.

Having picked up a description of the robbers on his car radio, Sheriff Thad Shelly immediately began to cruise around Caruthersville. Near "The Grill" on the opposite side of town from the Sportster, Shelly

observed three men, namely, Johnny Johnson (defendant herein), Robert Jones (subsequently identified as the gunman in the Sportster robbery), and Larry "Tuck" Wilson (not implicated in that robbery by the record under review). In response to Sheriff Shelly's request, this trio accompanied him to the Sportster for the particular purpose (so Shelly testified) of enabling Miss Mitchell to view them. However, when Shelly and the accompanying suspects arrived at the Sportster, Miss Mitchell was not there and another clerk had taken over her duties. Leonard Smith was one of those then in the store[1] but at that time Shelly did not know Smith personally and was not aware that he had been in the Sportster when the robbery occurred. Smith himself readily agreed that he was in the Sportster when "[t]hey brought some people out there" perhaps an hour after the robbery, but he iterated and reiterated that he was "mad," "all mad," "mad and all upset," and "pretty dang angry," and that "I just glanced at them and that's all I know"—"I was upset and I didn't try to identify any of them at that time."

Clerk Mitchell graphically described Smith's condition thusly, "when [the robbery] happened he [Smith] went all to pieces." And John Yerby, a Caruthersville police officer who was at the Sportster when Sheriff Shelly brought the three suspects there after the robbery, declared that Smith was "emotionally upset" and, "being upset . . . and more or less mad," he did no more than glance at the suspects. Defendant Johnson testified that Sheriff Shelly had "asked this guy, Leonard Smith [whom Johnson did not then know by name or otherwise], if he could identify us [the three suspects], and the dude said, no." Shelly shortly returned the suspects to a point near "The Grill" and released them.

■ Several days after the robbery, clerk Mitchell was asked to view, and did view, four male subjects individually in a showup[2] at the Caruthersville City Hall. In this showup, the officers brought in each subject more than once, sometimes behind and sometimes in front of a glass window. The four men viewed in this showup were the three suspects (of whom instant defendant, Johnny Johnson, was one) brought to the Sportster by Sheriff Shelly on the night of the robbery and another named Benny Johnson. The only one of the four men identified by Miss Mitchell was Robert Jones who (so she asseverated) was the gunman in the bandit trio. Whereupon, Jones was arrested and the other three were released. Customer Smith "was out buying cars" at an auction and hence did not attend this showup at Caruthersville City Hall. Subsequently Smith stopped at the jail to talk with an officer; and, when invited by him to view a prisoner, Smith walked by the cell in which Jones was confined and immediately exclaimed "why, there's the boy right there."

At the trial Miss Mitchell still did not identify instant defendant as one of the bandit trio and did no more than point to him as a man of the same race and "approximately the same age" as the members of that trio. However, when asked on the witness stand "[i]s there any doubt in your mind as to whether this defendant was there during the armed robbery," customer Smith confidently and unhesitatingly responded, "Not a bit in the world. He was there. He is the one that ordered the gum the first time . . . .." In sum, *prior to the trial* there was (insofar as the record discloses) no identification of defendant Johnson as a member of the bandit trio and no direct accusation that he was a coconspirator in the Sportster robbery, and *at the*

---

1. As Sheriff Shelly remembered the scene, "[t]here were three or four policemen and two or three deputies and two or three other subjects probably."

2. Although the term "showup" is sometimes used interchangeably with the word "lineup" to mean an array of persons, including a suspect or suspects, presented to a witness or group of

witnesses, it appears that "showup" more commonly and more properly refers to a situation where, as in the instant case, one suspect is shown by himself to a witness or a group of witnesses. See *Layton v. State,* 500 S.W.2d 267, 268–269(1) (Mo.App.1973), and the comment and citations there found in note 1.

*trial* the only identification of Johnson was by customer Smith.

Momentarily moving out of the main evidentiary stream, we observe briefly that, by the testimony of himself and five other witnesses (of whom two were defendant's sisters, two were his cousins, and one was a brother-in-law), defendant Johnson presented a defense of alibi, to wit, that from about 6:30 P.M. to 9:30 P.M. on the evening of the Sportster robbery, he attended a party at the home of his cousin, one Bobbie Wilson (not a witness), "in the rear of 1504 Vest" where the divertissements of the evening were outlined by defendant as "[d]rinking wine and beer, and talking and dancing and stuff like that" but were left entirely to the imagination and/or experience of the hearer or reader by the laconic open-end report offered by one of the female participants, "[w]hat people do do at parties, I guess, and funning, I guess."

With this sampling of defendant's evidence, we return to the State's case, more particularly to that portion thereof which affords the basis for the sole point upon which defendant here relies for reversal, to wit, that prejudicial error was injected into the trial when Sheriff Thad Shelly was permitted to testify, in substance, that Robert Jones, after his identification as the gunman and his subsequent arrest, made a statement to Shelly, whereupon he or other officers acting at his direction arrested instant defendant, Johnny Johnson. Jones did not testify at the trial under review here. The point presented on this appeal rests upon the gravity of the inference that Johnson was implicated in the robbery by Jones' statement to Sheriff Shelly, a result violative of and repugnant to the hearsay rule and the correlative right to cross-examine an accuser.

The *relevant segment* of Sheriff Shelly's testimony follows:

"Q. Now, did Robert Jones [theretofore identified as the gunman] ever make any statement?

"MR. DeREIGN [defendant's counsel]: Now, I object—

"A. Yes, sir, he did.

"MR. DeREIGN: Your Honor, that is hearsay and not binding in this case, what Mr. Jones said.

"THE COURT: Well, he can answer whether or not he made any statements but not what they were.

"Q. Did Robert Jones make any statements?

"A. Yes, sir, he did.

"Q. Who did he make the statement to?

"A. To myself and Art Stephenson.

"Q. After hearing this statement what, if anything, did you do?

"A. I then arrested, or called the City Police and had arrested Johnny Johnson—

"MR. DeREIGN: I object to that, Your Honor—

"A. And Benny Johnson.

"MR. DeREIGN: He is implying from the statement here that those names were obtained in that statement and he is basing his statement on hearsay as to this defendant.

"THE COURT: The objection will be overruled.

"Q. Mr. Sheriff, after taking [the] statement, what, if anything, did you do or any of the other officers do?

"A. We arrested two other subjects after—

"Q. Who did you arrest?

"A. Johnny Johnson and Benny Johnson.

"Q. This defendant, Johnny Johnson?

"A. Yes, sir."

The above-quoted testimony was reviewed and emphasized thusly in the closing argument of the Prosecuting Attorney:

"[W]hen Carroll Mitchell [the Sportster clerk] did see Robert Jones and positively identified him, Robert Jones was placed under arrest. The other suspects were let go. You heard Sheriff Thad Shelly testify that Robert Jones made a statement; after the Sheriff took this statement he went out and arrested two more—

"MR. DeREIGN: I object, Your Honor, as this is hearsay.

"THE COURT: I can't hear you. Are you objecting to it?

"MR. DeREIGN: I am objecting to the hearsay statement, Your Honor. I am objecting to it.

"THE COURT: Objection will be overruled.

"MR. HAZEL [Prosecuting Attorney]: You heard Thad Shelly testify that Robert Jones, the man who was positively identified by Carroll Mitchell gave a statement; that after the Sheriff took this statement he went out and arrested two other individuals, one being a Benny Johnson and one being this defendant; and this defendant, as you will recall, was in the company of Robert Jones approximately one hour after this armed robbery occurred."

■ The clear inference immediately suggested and convincingly supported by the above-quoted testimony of Sheriff Shelly, and effectively emphasized in the closing argument of the Prosecuting Attorney, to wit, that gunman Jones had implicated defendant Johnson as a coparticipant in the Sportster robbery, probably was as prejudicial as whatever Jones actually had said; and the same considerations which would have excluded the hearsay statement of Jones [*State v. Chernick,* 280 S.W.2d 56, 60(5) (Mo.1955)] forbade that any inference against defendant should be drawn from the conduct of Sheriff Shelly actuated by Jones' statement to him. *State v. Chernick,* 278 S.W.2d 741, 748 (Mo.1955).[3] Thus, Shelly's testimony inferentially disclosing that an alleged coparticipant had implicated defendant in the robbery "was just as much hearsay and objectionable as the implicating statement itself would have been." *State v. Edwards,* 435 S.W.2d 1, 6 (Mo. 1968). In this connection, see also *State v. Chernick,* supra, 280 S.W.2d at 59(3, 4); *State v. Blocton,* 394 S.W.2d 323, 325–326(4) (Mo.1965); *State v. Newell,* 462 S.W.2d 794,

796(1) (Mo.1971). We have no doubt but that the particular testimony of Sheriff Shelly under consideration was objectionable.

In fact, the State does not seriously question the legal principle upon which the foregoing cases were ruled but rather seeks to avoid the effect of failure to recognize and apply that principle in the case at bar because, so it is asserted, (a) the forbidden inference to be drawn from Sheriff Shelly's testimony was "merely cumulative and therefore not prejudicial" and (b) defendant's counsel did not interpose a timely objection.

■ *Of (a).* With their contention that the forbidden inference was merely cumulative and not prejudicial, counsel for the State offer three cases [*State v. Ford,* 495 S.W.2d 408, 414(6) (Mo. banc 1973); *State v. Williams,* 448 S.W.2d 865, 869(8) (Mo.1970); *State v. Kennedy,* 513 S.W.2d 697, 699–700(4) (Mo.App.1974)], no one of which supports the State's position on the factual situation presented here. In neither *Ford* nor *Williams* did the hearsay testimony, of which complaint was made, bear upon *identification* of the defendant as the perpetrator of, or a coparticipant in, the crime; and, in each of those cases there was other substantial evidence of the same tenor and effect as the objectionable hearsay. In *Kennedy,* the testimony of witnesses who described defendant's identification by one Borns, the victim of an assault and robbery, was hearsay and should have been excluded. But, after preliminarily noting that defendant's appellate complaint was "not reviewable since it was not raised at the trial nor in the motion for a new trial," the court pointed out in *Kennedy* that there was "strong primary evidence of defendant's identification by Borns and one gas station attendant both before trial and in the courtroom" and therefore it could not be said, as it was in the leading case of *State v. Degraffenreid,* 477 S.W.2d 57, 64 (Mo. banc 1972), that the

---

**3.** The absence of an opportunity to cross-examine Jones, the alleged coactor, also denied to defendant Johnson his constitutional right to confront the witnesses against him face to face.

Mo.Const. Art. I, § 18(a); U.S.Const. Amend. VI; *Pointer v. Texas,* 380 U.S. 400, 403–406, 85 S.Ct. 1065, 1067–1069(4–8), 13 L.Ed.2d 923, 926–928(2, 3) (1965).

hearsay identification testimony might have "tip[ped] the scales against defendant." 513 S.W.2d at 700. Accordingly, the court concluded that the testimony challenged in *Kennedy* "was cumulative and harmless." 513 S.W.2d at 700.

However, in significant respects the state of facts reflected by the record before us is akin to that in *Degraffenreid,* supra. In each case defendant was identified by only one eyewitness, who "was strong and positive in his identification of defendant" [477 S.W.2d at 64], although in the instant case customer Smith had *not* identified defendant about an hour after the Sportster robbery. In each case "[t]he defense was basically [an] alibi," in *Degraffenreid* confirmed by only one other witness [477 S.W.2d at 64] but in the instant case by five other witnesses. And in each case the hearsay testimony was that of a law enforcement officer corroborating the identification of defendant by a sole testifying eyewitness. Tracking *Degraffenreid,* we view the case before us as one in which the hearsay testimony of Sheriff Shelly supporting the positive, albeit belated, identification of defendant by customer Smith could have "confirm[ed] the believability of [Smith's] testimony and thereby tip[ped] the scales against defendant." 477 S.W.2d at 64. And borrowing the language of Finch, C. J., in his concurring opinion (in which four other members of the court joined), "we cannot conclude and declare that as a matter of law the admission of [Sheriff Shelly's] testimony was harmless error" or that such testimony was "cumulative" in the true sense of that term as there clarified. 477 S.W.2d at 67.[4]

■ *Of (b).* As presented by the State in its *"Point Relied On,"* this contention is that "[t]he court did not err in admitting *the testimony of Sheriff Shelly* for the reason that . . . (b) appellant failed to make a timely objection." (All emphasis herein is ours.) However, this broad generalized complaint is narrowly restricted by the introductory assertion in their *argument* of the (b) prong that "by failing to make a timely objection to *the question* put to Sheriff Shelly, appellant failed to preserve anything for review," shortly followed in the argument by a single question, answer and objection isolated and lifted out of Shelly's testimony and quoted thusly in the State's brief:

"Q. After hearing the statement (of the coparticipant), what if anything, did you do?

"A. I then arrested, or called the city police and had arrested Johnny Johnson.

"Mr. DeReign: I object to that, Your Honor."

Our initial observation is that, by comparing this *truncated excerpt* in the State's brief with the same question, answer and objection beginning with the fourth question in the hereinbefore-quoted *relevant segment* of Sheriff Shelly's testimony faithfully copied from the transcript, we discover that the *truncated excerpt* is *inaccurate, incomplete* and *misleading,* in indicating that Sheriff Shelly's answer had been completed before Mr. DeReign objected and again in indicating that Mr. DeReign then had interposed nothing more than a belated, bland general objection, whereas in fact the *relevant segment* shows that Mr. DeReign *immediately* interrupted witness Shelly and undertook to interpose an objection when *defendant Johnny Johnson* was mentioned, that however witness Shelly quickly interrupted Mr. DeReign's objection and completed his interrupted answer, and that Mr. DeReign then was permitted to finish his objection which was summarily over-

4. In this connection, see also *State v. Davis,* 530 S.W.2d 709 (Mo.App.1975), in which the St. Louis District per Houser, Sp. J., reversed and remanded a judgment of conviction in a store robbery case on account of the erroneous admission in evidence of a sawed-off shotgun and, in rejecting the State's argument on motion for rehearing that such error should be disregarded as harmless, the court pointed out that it "was not an especially strong case" and "had inherent weaknesses," among which was the inability of the store manager, who was "present at the robbery," to identify defendant as one of the robber trio. 530 S.W.2d at 711 and 714. In the instant case, clerk Mitchell could not identify defendant as a participant in the Sportster robbery.

ruled. Of course, we disregard the inaccurate *truncated excerpt* and look only to the transcript in ruling the State's contention that "appellant failed to make a timely objection."

In considering this point, we have had in mind the familiar general principles pertaining to the timeliness vel non of evidentiary objections during trial as summarized in *State v. Simmons,* 500 S.W.2d 325, 328–329(2–6) (Mo.App.1973), the sole case cited by the State on prong (b). However, a review of many Missouri cases convincingly demonstrates that, in the construction and application of these principles, our courts have followed a practical, reasonable and commonsense course with a view to the doing of substantial justice on the record presented in the specific case under consideration. E. g., see *State v. Williams,* 416 S.W.2d 71 (Mo.1967), and *State v. Penn,* 413 S.W.2d 281 (Mo.1967).

A situation analogous to that under consideration here was presented in *State v. Blocton,* supra, 394 S.W.2d at 325–326(4, 5). There, as here, a coparticipant "fingered" the defendant on trial. There, as here, when defendant's counsel undertook to object to the verboten testimony of the officer, counsel got no further than "I object" before he was interrupted (there by the State's attorney, here by the eager witness), after which counsel was able to interpose the completed objection specifically predicated there, as here, on the ground of hearsay. And there, as here: "The sufficiency of the objection is not questioned for lack of a motion to strike. . . . The highly prejudicial nature of the testimony, solicited by the prosecution and going to the heart of appellant's defense, could not have been cured by a motion to strike. Therefore, the objection made and the relief requested sufficiently presented the matter for review. *State v. Burchett,* Mo.Sup., 302 S.W.2d 9, 13–15[1–3]." *Blocton,* supra, note 1 on p. 326. In the case at bar we are satisfied that, on the transcript here presented, the interrupted objection was interposed at such time and in such terms as to present defendant's complaint to the trial court and preserve such complaint and the ruling thereon for appellate review. *Blocton,* supra.

For the error in admitting the above-noted testimony of Sheriff Shelly over objection, the judgment of conviction is reversed and the cause remanded for a new trial.

BILLINGS, C. J., and TITUS, J., concur.