STATE of Missouri, Respondent,

v.

John D. GORMON, Appellant.

No. 40059.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 26, 1979.

Doris Gregory Black, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Marjorie Whaley Haines, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Gordon L. Ankney, Asst. Circuit Atty., St. Louis, for respondent.

REINHARD, Presiding Judge.

Defendant appeals his conviction of both "statutory" rape and kidnapping. He was sentenced by the court under the Second Offender Act to twenty years on the rape charge and five years on the kidnapping charge, these sentences to run concurrently.

The prosecutrix was a fifteen year old girl who testified that at about a quarter to eight on the evening of August 7, 1977, she was standing at a bus stop on the corner of Easton and Dr. Martin Luther King Drive in the City of St. Louis, awaiting a bus to take her to her boyfriend's home. While so waiting, someone grabbed her around the neck from behind, dragged her past the corner, and thrust her in the front seat of his car. Her assailant drove her about the city for approximately twenty minutes before stopping the automobile in an alley and forcing her to engage in intercourse against her will. Finally, he drove her to her boyfriend's home.

Upon leaving the automobile, the prosecutrix made note of its license number and wrote it down once inside the house. The police were notified and the individual who raped her described. The fact that the assailant wore a particular variety of tennis shoes was mentioned in this description.

She also told the police that the auto had a jacket and some magazines in the back seat, a cupholder sitting on the floor and several napkins in the glove compartment. She further testified that she was on her menstrual period and was using a sanitary napkin which she threw out the window at defendant's behest.

Her boyfriend saw her alight from the automobile and testified that it was a green, 1972 Delta 88.

A green 1972 Delta 88 was registered in the name of defendant's wife, and the testimony was that, at the time of the offense, he had been driving the vehicle.

On the morning of August 8, 1977, the prosecutrix was taken to the home of defendant's wife where the car was parked. A jacket and several magazines were found in the back seat, a cupholder on the floor, and several napkins in the glove compartment.

The defendant was later arrested and selected from a line-up by the prosecutrix. Defendant presented an alibi defense.

On appeal, defendant first avers that the trial court erred in the admission of state's exhibits 1–10 and 12, contending that the state failed to make a full disclosure, prior to trial, pursuant to defense counsel's request under Rule 25.32.

Defendant's motions to disclose were timely made and, in accordance with Rule 25.32, requested among other things:

(5) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments [and] comparisons.

(6) Any books, papers, documents, photographs or objects, which the state intends to introduce into evidence at the hearing or trial or which were obtained from or belonging to the defendant.

The day before the trial defendant also filed a "Motion to Inspect" which requested that the Court order the prosecution to make available for his inspection, "reports and clothes to be used in evidence." This motion was granted.

Received in evidence over defendant's objections were State's Exhibit 10: a pair of tennis shoes seized from defendant after the August 8, line-up, State Exhibits 1–9: pictures taken of the interior of the car on August 8 and one photo of the line-up; and, State's Exhibit 12: a medical report of the physician who examined the alleged victim.

The police report, which was supplied by the Prosecuting Attorney to defense counsel in compliance with the motion to disclose, stated:

It should be noted that during the line-up the victim informed Officer Reynolds that the subject she had identified was wearing the same tennis shoes at this trial as he had on at the time of the incident, therefore, Officer Reynolds seized same from the subject and packaged same as evidence.

The day before the trial the court took up defendant's motion to inspect and the Prosecuting Attorney told the court, "We did not seize his clothing other than the shoes."

The court, in overruling defendant's objection to the admission in evidence of the shoes, reasoned that since defendant's counsel was aware of the existence of the shoes; if he wanted to see them he should have made an effort to do so.

Also received in evidence over defendant's objection was the medical report of the physician responsible for examining the prosecutrix. The defendant had been furnished a copy of a portion of the report but on the day before the trial, at which time the court sustained defendant's motion to inspect, the Prosecuting Attorney informed the court that he had not yet received the results of the sperm test from the laboratory. The court ordered the Prosecuting Attorney to inform defense counsel as soon as the results were available and he complied. The test results show "spermatozoon found." The court, in overruling the objection, stated that defense counsel knew the results of the test were not available before the trial began, and yet, had proceeded to trial offering no objection.

The trial court also received in evidence, over the objection of defendant that the prosecution failed to make disclosure, certain photographs: State Exhibits 1 through 9. Exhibit No. 1 was the photo of the line-up. The court, in overruling defendant's objection to Exhibit No. 1 stated that the record indicated defense counsel had been aware of the state's intention to offer the photograph into evidence and this awareness was demonstrated in one of defendant's pre-trial motions.

Exhibits 2 through 9 were photographs of the interior of the car. The state argued that they were not produced only because they were developed immediately prior to trial. The court ruled that failure of the state to disclose Exhibits 2 through 9 was, "in violation of the rules of discovery." The court then offered the defendant a one day continuance "for the purpose of whatever investigation the defendant might desire." The court obviously felt the circumstances required a continuance but that the violation was itself, not so prejudicial as to necessitate the exclusion of the exhibit. The defense attorney refused the continuance stating that it was insufficient to alleviate the prejudice worked on defendant.

■ Rule 25.32 provides for disclosure by the state to a defendant of certain material and information upon his written request. Rule 25.45 provides for the exclusion of evidence not produced under discovery rules, as but *one* of the sanctions available to the trial court. Whether the exclusion of

evidence not produced, as per request, is the appropriate sanction in a particular instance, is a matter within the trial court's discretion. The ultimate question being: whether or not the failure to produce has resulted in fundamental unfairness or prejudice to the defendant. *State v. Moten*, 542 S.W.2d 317, 320 (Mo.App.1976).

On appeal, the basic issue for our consideration is whether or not the exercise of that discretion constituted abuse. And, again, a finding of abuse is necessarily a finding that the trial court's action (or inaction) resulted in prejudice or fundamental unfairness to the defendant. Id at 321. This "prejudice", in turn, depends upon the nature of the charge, the evidence presented, and the role the undisclosed evidence might have played in the preparation of a defense.

Turning our attention to the action of the trial court, we find no abuse of discretion. We agree with the trial court that the defendant had sufficient prior knowledge of the state's possession of the shoes so as not to have been surprised by their introduction into evidence. Before the trial began the defendant knew that the state had not received the results of the "sperm test" and should well have known that if the results were favorable, the state would attempt its introduction. Armed with this knowledge, the defendant still made no request for a continuance, pending the results of the test.

The court properly found that the state should have disclosed the photographs to the defendant prior to trial. The court believed that a continuance until the next day was sufficient to give the defendant an opportunity to examine and investigate with regard to the pictures and their implication. A continuance is another of the remedies contemplated by Rule 25.45. The pictures merely corroborated the testimony of the prosecutrix and the police officer as to the contents of the automobile. The defendant himself offered testimony as to the contents of the automobile, denying that there were any napkins in the glove compartment. This, contrary to the testimony of his wife that she had, in fact, left some napkins in the glove compartment of the automobile. The pictures themselves served to shed some light on this contested issue.

Under the facts presented here, we find no abuse of discretion in the admission of the evidence of which defendant complains.

Defendant next contends that Section 559.260 RSMo 1975 Supp., is unconstitutional as it violates the Fourteenth Amendment to the United States Constitution in that said section denies equal protection of the law to males under the age of sixteen, while at the same time purporting to protect females under the age of sixteen from rape.

Section 559.260, provides in part:

Every person who shall be convicted of rape . . . by carnally and unlawfully knowing any female child under the age of sixteen years . . . shall be punished by imprisonment by the division of corrections for not less than two years.

The Missouri Supreme Court in *In re Interest of J.D.G.*, 498 S.W.2d 786 (Mo.1976) held that Section 559.260 does not violate the Equal Protection Clauses of the Missouri Constitution or the United States Constitution. We are bound by this decision and are not at liberty to render a different result. Defendant's equal protection argument is without merit.

Defendant also contends that the court erred in finding defendant was a "Second Offender" within the meaning of Section 556.280 RSMo 1969, claiming that the state failed to establish that defendant had been found guilty of a prior felony.

The record showed that defendant entered a plea of guilty to the charge of unlawfully and feloniously having in his possession a quantity of marijuana, a controlled substance, in excess of 35 grams. He was sentenced to serve a term of six months in the county jail and placed on probation for four years.

He was charged and convicted under Section 195.200.1(1)(b) RSMo 1975 Supp. Conviction for the first offense of possession of

more than thirty-five grams of marijuana is a felony with a penalty of imprisonment in the state correctional institution for a term of not more than five years; or, confinement in the county jail for not more than one year; or, a fine of not more than one thousand dollars; or, both confinement and a fine.

The fact that the punishment assessed for the felony was imprisonment in the City Workhouse of St. Louis, rather than the state penitentiary, does not prevent prosecution under the Second Offender Act. We note like circumstances in *State v. Kennedy*, 513 S.W.2d 697 (Mo.App.1974) wherein a defendant, charged with robbery and assault, made a similar claim to that of our defendant. In *Kennedy*, the state alleged two prior felony convictions for offering forged instruments. The defendant argued, albeit unsuccessfully, that the Second Offender Act did not apply inasmuch as he was sentenced to serve time in the workhouse rather than in the state penitentiary. The *Kennedy* court did not appreciate the fine distinction between time served in the Workhouse and time served in the penitentiary and held that the phrase contained in the Second Offender Act, "punishable by imprisonment in the penitentiary" was a term of art synonymous with the term "felony". Use of the first term was designated as merely an indication of legislative intent that the Second Offender Act is to apply only where the earlier conviction was for a felony. *Id* at 700.

The three factors required to make the Second Offender Act applicable were both alleged and proven. The defendant was convicted of a prior offense punishable by imprisonment in the penitentiary, sentenced therefor, and subsequently placed on probation. *State v. Blackwell*, 459 S.W.2d 268 (Mo. banc 1970); *State v. Kennedy*, 513 S.W.2d at 700. Furthermore, as defendant failed to object at trial to the application of the act, this issue has not been preserved for review. *State v. Lockhart*, 501 S.W.2d 163 (Mo.1973).

Defendant next contends that the court erred in failing to sustain defendant's motion to suppress identification because the pretrial line-up was impermissibly suggestive. The basis for this claim is that defendant was the only one in the line-up wearing tennis shoes. The prosecutrix testified at trial that defendant was wearing tennis shoes at the time of the offense. However, the shoes were not the only recognizable or distinguishing characteristic of defendant at the line-up. The prosecutrix testified that he had an afro hair cut approximately one inch long, bushy eyebrows, and a big stomach. We do not find the line-up to have been impermissibly suggestive. In *State v. Arnold*, 528 S.W.2d 164 (Mo.App.1975) we held that a line-up procedure was not unduly suggestive where the defendant was wearing the same articles of clothing as was the criminal offender.

Whether a line-up is so impermissibly suggestive as to require exclusion of the identification is to be determined by the totality of circumstances; and, even though the line-up identification is tainted or in some way suggestive, where there is an independent factual basis for the in-court identification, an in-court identification is proper. *State v. Macon*, 547 S.W.2d 507 (Mo.App.1977). Here, the prosecutrix was with the defendant for an hour and a half. No other crime offers a greater opportunity for the observation of its perpetrator as does the crime of rape. *State v. Green*, 515 S.W.2d 197 (Mo.App.1974). The prosecutrix' in-court identification was positive and the identification testimony was admissible.

In defendant's next point he states that the evidence of detention and confinement necessary to establish kidnapping was merely incidental to the crime of statutory rape and, therefore, was insufficient to prove the separate crime of kidnapping. In *State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977), cert. denied 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978), our Supreme Court said:

Under Missouri's several offense rule, such multiple convictions are permissible if the defendant has in law and in fact committed separate crimes.

In determining whether several charges from one act or transaction are identical we look to "whether each offense necessitates proof of an essential fact or element not required by the other; if so there is no identity of offense." *State v. Treadway*, 558 S.W.2d at 651; *State v. Chambers*, 524 S.W.2d 826 (Mo. banc 1975), cert. denied, 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976).

In *State v. Johnson*, 549 S.W.2d 627 (Mo. App.1977) our Western District Brethren were confronted with a defendant's argument that the kidnapping of the victim was not a separate crime but incidental to the crime against nature. The court after having discussed the principles of law involved as to what constitutes proof of an entirely separate and distinct offense, determined that the facts in that case indicated the kidnapping was not merely incidental to the crime against nature.

Statutory rape requires proof that the defendant·inserted his sex organ into the sexual organ of the prosecutrix and, further, that she was less than 16 years of age. Section 559.260, RSMo 1975 Supp. The crime of kidnapping requires proof of a forcible seizure, confinement, inveiglement or enticement of another, with intent to asport or secretly confine the other against his will. Section 559.240 RSMo 1969. Kidnapping requires proof of an additional element: i. e., the intent to secretly confine. The crime of "statutory rape" does not require this essential element and, therefore, is not an identical offense which precludes prosecution under the concept of double jeopardy.

Defendant relies upon *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965), wherein the defendant forced his way into an automobile and (in the course of twenty minutes, twenty seven block drive) robbed the occupants. Thereafter, he was convicted of both kidnapping and robbery. The *Levy* court, in reviewing the kidnapping conviction, found that the kidnapping was incidental to the robbery. The court stated at [256 N.Y.S.2d at 796, 204 N.E.2d at 844]:

the movement of the automobile, which was itself *the* situs of the robbery, was not essentially different in relation to the robbery than would be the tying up of the victim in a bank and his movement into another room. In essence the crime remained a robbery.

A collection of cases which discuss this issue as raised by defendant, can be found in 43 A.L.R.2d 699. There appears to be two rather disparate views: 1) That the seizure or detention of a rape or robbery victim, with an accompanying movement, is sufficient to constitute the separate crime of kidnapping, or, that the facts may establish the movements as merely incidental to the commission of the rape or robbery. It is unnecessary for us to review these cases. They range from the asportation of the rape victim 11 feet wherein the court found the evidence sufficient to constitute the separate crime of kidnapping, *State v. Ayers*, 198 Kan. 467, 426 P.2d 21 (1967); to a movement from Manhattan to Queens which was insufficient to constitute kidnapping. *People v. Lombardi,* 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967). We recognize that detention of the prosecutrix for one and one-half hours does not equate with the 16 hour detention in *State v. Johnson*, supra. We find, however, that the conviction of kidnapping in this case was both separate and distinct from that of "statutory rape". Accordingly,·defendant's claim of double jeopardy must fail.

It is a rare kidnapping that is an end in itself; almost invariably it is the means by which one attempts to facilitate the commission of another crime. We cannot approve any principle which exempts one from prosecution for all crimes he commits because he sees fit to compound or multiply them. Such a principle would inevitably encourage the compounding and, ultimate viciousness of criminal acts.

Finally, defendant urges that the court erred in failing to sustain his motion for judgment of acquittal because the state failed to make a submissible case on *either* charge. The state adduced evidence of all the elements of the crime of kidnapping.

426

The prosecution offered evidence of forcible seizure with intent to secretly confine the prosecutrix in this state against her will. Contrary to defendant's contention, secret confinement does not require total concealment nor complete isolation whereby the victim is rendered invisible to the entire world. Section 559.240 RSMo 1969; *State v. Weir*, 506 S.W.2d 437 (Mo.1974); *State v. Jines*, 539 S.W.2d 801 (Mo.App.1976).

The elements of the offense of "statutory rape" were also well established by the evidence. The prosecutrix testified that defendant's sex organ entered her's and that she was 15 years of age. The state made a submissible case on both charges.

We have carefully reviewed defendant's pro se brief and find that his complaints are either covered by the points raised in his attorney's brief or were not preserved for appellate review. We have considered these matters and find no error.

Affirmed.

GUNN, and CRIST, JJ., concur.