**STATE of Missouri, Respondent,**

v.

**William Edward JOHNSON, Appellant.**

**No. KCD 28470.**

Missouri Court of Appeals, Kansas City District.

April 4, 1977.

Kenneth K. Simon, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Philip M. Koppe, Asst. Attys. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

The defendant was charged by indictment in three counts with the crimes of rape, crime against nature and kidnapping. The motion of defendant for judgment of acquittal at the close of the evidence for the State was sustained as to Count I for rape. The jury found him guilty on Count II of the crime against nature [§ 563.230, RSMo 1969] and on Count III for kidnapping [§ 559.240, RSMo 1969] and he was sentenced to consecutive terms of one hundred and fifty years and ten years for the respective offenses.

The appeal contends that Count III for kidnapping was multiplicitous of the crime against nature charged by Count II in that the evidence of the detention and confinement necessary to convict for kidnapping was merely incidental to the perpetration of the crime against nature and thus was insufficient to prove the separate crime of kidnapping. The appeal also contends error in the failure to grant defendant a full hearing on his motion to suppress identification.

There was evidence that the late afternoon of June 10, 1975, three children—Patricia [nine years of age], her brother Rob-

ert [eight] and their friend Stephanie [eleven] waited at a bus stop. A man in a green Cadillac, identified as the defendant, accosted them and offered money to help find his little sister. He suggested that they separate for this purpose, which they did. When she was alone, the defendant induced Patricia into his car with the promise of money, but since he had no change it would be necessary to drive to the store for that purpose. He cautioned her not to tell about the money because that would cause him to go to jail. They drove along and passed by her brother Robert near a store, but he did not stop the car as she had expected; instead the defendant drove the car down an alley. There the defendant threatened to kill her because he believed she would tell; she denied that, and commenced to cry.

Her brother Robert and Stephanie had both seen Patricia in the green Cadillac with the defendant as they came by. Then, when the car came to rest in the alley, Willie Pleasure, who worked in a neighborhood store and knew Patricia and her family, drove up beside the Cadillac to inform the defendant his car was wrongly directed on that one-way street and would probably be noticed by the police. He then saw Patricia in the car. They did not speak, but she appeared to be frightened. The defendant resumed the drive and turned down another alley where the car ran out of gas. The defendant continued to threaten her during this time.

It had become dark by then and the defendant ordered her to remove her underpants and to flex. He then proceeded to penetrate her mouth with his genital, repeated that perversion, and then penetrated her anus. He attempted to enter her vagina but did not succeed. The defendant then fell asleep from the effects of a bottle of liquor he had consumed. Patricia then attempted to open the door to escape, but she thought he heard her, so she shut the door again in fear. When it became morning he repeated the anal perversion, and then let her out of the car. It was then about six in the morning.

She returned home frightened and nervous and complained of anal pains to the mother. After examination at the hospital, she was interviewed by the police and led them to the vicinity of the assault and detention, where the green Cadillac was found. That vehicle was found to be registered to the defendant. Certain items of evidence described by Patricia, including a whiskey bottle, were also found in the automobile.

An officer displayed a series of photographs, including one of the defendant, to the three children in turn and out of the presence of the others. It developed on cross-examination that two of the photographs contained notations on the rear— one of them, the legend "William R. Johnson, Rape". The defendant then for the first time offered a motion to suppress the identification on the ground that the display of photographs was suggestive, and the court allowed a hearing on the issue. In the course of the evidence the officer who arranged the view of photographs testified that he could not recall whether the notations then present were also present when shown earlier, but observed that the array was placed on a table face-up so that the backs were not visible to the children. The defendant requested opportunity to interrogate the three children on this issue, but the court refused because of concern for the infant witnesses.

At the resumption of the trial Stephanie positively identified the defendant as the man who had talked to them and whom she had seen in the green Cadillac with Patricia. She had previously identified the defendant from the array of photographs. Although she examined front and rear of the pictures, she did not remember whether there was any writing on the back side of the representation of the defendant. The boy Robert also positively identified the defendant at the trial. He had also been shown the photographs and picked the defendant from among them, but did not look at the reverse sides. Patricia firmly identified the defendant as the man who lured her into the car and assaulted her. Willie

Pleasure also identified the defendant in-court as the man he had seen with Patricia in the Cadillac. He had earlier picked the defendant from some photographs displayed to him at the police station.

The medical examination of Patricia indicated irritation and fissure of the rectum but no damage to the vagina. Seminal and fecal material were found on a piece of cardboard which defendant had placed between the child and the car seat to prevent soilage of the interior. A latent fingerprint taken from a vodka bottle found in the car was identified as that of the defendant.

The defendant did not testify but offered proof of alibi. At the conclusion of the evidence, judgment of acquittal on Count I for rape was entered and the remaining counts for crime against nature and kidnapping were submitted to the jury.

The first point made contends that the evidence shows nothing more than a detention and confinement of the child Patricia incidental to the crime against nature but no proof of a separate kidnapping offense. The argument goes further: The act of kidnapping was only the means by which the criminal purpose of the sexual assault was accomplished and to punish for the kidnapping—which, in the context of the transaction was only an incident of the assault—put the defendant twice in jeopardy for the same offense.

■ There can be no doubt that under our decisions where the same act constitutes separate offenses not included within the other, the constitution does not preclude conviction for each of them. *State v. Moore*, 326 Mo. 1199, 33 S.W.2d 905, 907[4] (1930). The double jeopardy doctrine is directed to the identity of the offense, and not to the act. It forbids the state from piecemeal prosecution of a single offense. *State v. Carter*, 535 S.W.2d 537, 538[1] (Mo. App.1976). Offenses are not identical when one necessitates proof of an essential fact or element not required by the other. *State v. Chambers*, 524 S.W.2d 826, 828[1, 2] (Mo. banc 1975).

■ The law recognizes a correlative principle, invoked by the defendant, that a person convicted of an offense and then put on trial for an element of that offense has been put twice in jeopardy for the same accusation. *State v. Parsons*, 513 S.W.2d 430, 438[5–8] (Mo.1974). The defendant attempts to relate this principle to his contention that the detention and confinement of the child was not an act of kidnapping but the means to the assault.

Three cases have applied this principle to nullify convictions. In *State v. Richardson*, 460 S.W.2d 537 (Mo. banc 1970), the defendant was convicted of attempted robbery when he placed a knife against the store clerk in an unsuccessful attempt to obtain money from him. He was later convicted of assault with intent to maim without malice for the same conduct. The court reversed the subsequent conviction on the rationale [l. c. 539] that the assault was the substantive element of the attempted robbery for which conviction had already resulted and so the defendant could not be prosecuted again for that same assault. The court rejected the prosecution theory that because each assault required proof of a different intent, the first an intent to rob and the second an intent to maim, they constituted separate offenses and prosecutions not precluded by double jeopardy. The court concluded that mere allegation of a different intent by the defendant did not avoid a double prosecution for the same assault.

In *State v. Parsons*, 513 S.W.2d 430 (Mo. 1974), the defendant was convicted of first degree murder by bombing and then of bombing. The conviction for bombing was reversed because [l. c. 438] "the necessary act toward the commission of the bombing was the identical act necessary to constitute the crime of murder . . . If there is but one single act of force proved as an incidental means of committing a murder that act of force may not also be charged as a separate crime." The court reached this conclusion on the reason stated in *Richardson*, among other authorities.

■ Another decision, adopted concurrent with *Parsons* by the Supreme Court, uses the rationale of *Richardson* that a single act of force cannot be proved both as an incident of one offense and then also as a separate offense without violation of double jeopardy. In *State v. Neal*, 514 S.W.2d 544 (Mo. banc 1974) the defendant was convicted of first degree robbery of store employee Walton, and the assault with intent to kill Walton and the assault with intent to kill store owner Cordes, all from the same criminal conduct of the accused. The court reversed the conviction for the assault of employee Walton because the robbery from his person was the result of the same act of assault against him. The court determined [l. c. 548]: "To thus split the single crime of robbery and prosecute it in Count I and a second time in Count III as an assault violated the rule against double jeopardy". The court upheld the conviction under Count II for the assault against Cordes, because the proof was of different conduct than that charged in the robbery count, and thus was a separate crime. Implicit within this formula is the corollary and exception that a single act of force against one person allows only one criminal prosecution against the actor, however the essential elements of the offenses may be described. *Richardson*, l. c. 540; *Parsons*, l. c. 438; *Neal*, l. c. 548.

The defendant here does not come within these protections because, contrary to contention, the prosecutions do not punish him twice for the same conduct: first, for the crime against nature and, second, for the detention [kidnapping] which is mere incident of the sexual crime.

■■ The crime against nature requires proof of an unnatural corporeal copulation with mankind or beast. § 563.230, RSMo 1969. The crime of kidnapping requires proof of a forcible seizure, confinement, inveiglement or enticement of another with intent to asport or secretly confine the other against his will. § 559.240. The essence of the offense is the involuntary restraint of liberty [*State v. Brown*, 217 S.W.2d 546, 548[3] (Mo.1949)] with specific intent to confine the victim. *State v. Higgs*, 325 Mo. 704, 29 S.W.2d 74, 75[1] (1930). We use the *Chambers* formula and determine that kidnapping requires proof of an essential element [intent to secretly confine] not required of the crime against nature, and so, is not an identical offense precluded from prosecution by principles of double jeopardy.

■ The offense of kidnapping, whether accomplished by an asportation or confinement, involves a false imprisonment. *Furlong v. German-American Press Ass'n*, 189 S.W. 385, 389[9–12] (Mo. banc 1916); MAI–CR 6.30. In practical terms, a sexual assault also requires a physical restraint of some sort. It appears to be the sense of the argument by the defendant here that the unlawful detention—which is the character of the false imprisonment—was merely the means by which the sexual assault was committed and so should not be punished separately as kidnapping. This position merely shows the larger concern of legal authorities that since most conduct within the scope of kidnapping law is already punishable as other crimes [e. g. extortion, rape, sex perversion, contribution to delinquency of a minor] the law, in practical effect, allows additional sanctions merely because the crime is accompanied by a detention or asportation.

This view distinguishes authentic kidnapping from verisimilar conduct where the purpose is to commit a different offense [Comment, A Rationale of the Law of Kidnapping, 53 Col.L.Rev. 540 (1953), l. c. 556, 558]:

> Where the defendant has some ultimate purpose, such as rape or robbery, which is itself criminal, his conduct should be dealt with as rape [or] robbery . . . [but where] the asportation or detention significantly increases the dangerousness or undesirability of the defendant's behavior . . .

his conduct is no longer cumulative of the rape or robbery [or other offense] but tends to prove a separate kidnapping.[1] *People v.*

---

1. See, also, the Model Penal Code, § 212.1 and Comments, Tentative Draft No. 11, p. 15 which would limit kidnapping to "removal or confinement involving substantial isolation of the vic-

*Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, 238[3] (In Bank 1969); *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965).

To prevent prosecution distortion of a lesser crime into a more serious kidnapping merely because the criminal conduct also amounts to a false imprisonment, the courts have found the proof insufficient for kidnapping where the asportation or detention was only *incidental* to the criminal purpose of the defendant. Thus, in *People v. Levy, supra* [15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842], the defendant forced his way into a car and in the course of a twenty-minute, twenty-seven block drive robbed the occupants, and was convicted of kidnapping and robbery. The court reversed the kidnapping conviction because [256 N.Y.S.2d 1. c. 796, 204 N.E.2d 1. c. 844]:

> . . . the movement of the automobile, which was itself the situs of the robbery, was not essentially different in relation to the robbery than would be the tying up of the victim in a bank and his movement into another room. In essence, the crime remained a robbery.

In *People v. Daniels, supra* [71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225], the defendants in the course of the robbery and rape of three woman in a residence forced them to move eighteen feet, six feet and thirty feet, respectively. The court recognized that some brief movements are necessarily incidental to rape and robbery, but that [80 Cal.Rptr. 1. c. 904, 459 P.2d 1. c. 232]:

> . . . [the] defendants had no interest in forcing their victims to move just for the sake of moving; their intent was to commit robberies and rapes, and the brief movements which they compelled their victims to perform were solely to facilitate such crimes. It follows, a fortiori, that those movements were "incidental to" the robberies and rapes . . . .

and not proof of kidnapping because these asportations did not substantially increase the risk of harm to the victims [80 Cal.Rptr. 1. c. 910, 459 P.2d 1. c. 238] "over and above that necessarily present in the crime[s] of robbery [and rape]". See also, *People v. Miles*, 23 N.Y.2d 527, 245 N.E.2d 688 (1969).

We consider these authorities to be sound, but the evidence against the defendant, nevertheless, proves a detention and movement of the victim not only as a means to facilitate the sexual acts upon her but calculated to detain her in isolation and secret. The defendant confined the infant victim in the automobile for about sixteen hours against her will and by threats upon her life. Although she was seen by the other children as the defendant drove by them to the alleyway, he had directed her to bend out of sight, from which the intent to conceal and isolate her are shown. It does not matter that Willie Pleasure detected them on the one-way street; the movement of the car into the alley tends to prove the intent of the defendant to seclude and secrete the child. The secret confinement required for proof of kidnapping under § 559.240 does not mean total concealment or total isolation. That element is established where the victim is "prevented from [effectively] communicating his situation to others and [the] accused's intention to keep the victim's predicament secret is made manifest". *State v. Weir*, 506 S.W.2d 437, 440[3–5] (Mo.1974).

The inveiglement and secret confinement of the child Patricia were complete before the sexual acts were practiced upon her. The detention and asportation of the child were not merely incidental to the crime against nature—which did not take place until the fall of darkness some hours later—but were expressions of a fixed intention to isolate and confine the child against her will. Nor is this a case where the victim of assault was released upon completion of the act, but rather was con-

tim where the duration of the isolation, the intention of the kidnapper, or other circumstance, makes the behavior specifically terrify-

ing or dangerous." See, generally, 43 A.L.R.3d 699, 702, Kidnapping—Asportation for Other Crime.

tinued in a detention which substantially increased the risk of harm already present, and made possible further assaults. Such conduct constitutes kidnapping by any standards of legal theory and proof.

We reject altogether the contentions of defendant that kidnapping was an incident of crime against nature, and so not subject to separate prosecution, as well as corollary contention that the detention of the child was only incidental to the sexual crime and so did not prove a kidnapping.

The second point contends the trial court erred in the refusal to defendant of a full hearing on his motion to suppress identification. That point falls short for a number of reasons. The request to suppress the identification evidence of Willie Pleasure and the children Patricia and Robert arose for the first time during the course of trial and was not orderly or timely. The court acquiesced to the extent that the officer who conducted the display of photographs to these witnesses was called and examined, but from concern for the children, refused defense request that they be called to determine whether identification of the defendant was unduly suggested to them. These witnesses were presented at the trial and the defendant challenged the accuracy and fairness of the procedures by which their identifications were made. This evidence came in without objection, as did the in-court testimony of each that defendant was the same man who had taken Patricia into the vehicle. The testimony of each was positive and unqualified, as was the identification of Patricia.

A number of procedural defects defeat this point. The defendant failed to move the suppression of identification before the trial and so did not preserve the contention for review [*State v. Young*, 534 S.W.2d 585, 589[3, 4] (Mo.App.1976)]; he failed to object to the trial identification testimony of the three witnesses and so defaulted appellate consideration of the point. *State v. Brownridge*, 459 S.W.2d 317, 320[8] (Mo.1970). Most conclusively, the trial identification by the three witnesses and the child Patricia was so clear and

unequivocal that they stand as evidence free from any possible taint of suggestiveness.

There is no room to dispute the opportunities for these witnesses for direct views of the defendant in the open light for sustained periods of time. Pleasure conversed with him by the car face to face. The boy Robert saw the defendant twice, first when he approached all three children, and then when the car with the defendant and Patricia stopped right by him. Stephanie, then waiting with Robert for Patricia to return, made the same observations. These circumstances provide an independent basis for the identifications of the defendant by the witnesses. The defendant, of course, does not dispute the basis of the identification by the victim who was his captive for more than half a day.

The judgment is affirmed.

All concur.