THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DOUGLAS MILLER, Defendant-Appellant.
Fourth District    Nos. 14657, 14658 cons.

Opinion filed April 7, 1978.

James W. Johnson and Jessica A. Stricklin, both of Johnson, Davison & Stricklin, of Decatur, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur, for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

The defendant, Douglas Miller, was sentenced to two concurrent terms of 9 to 18 years' imprisonment after he pleaded guilty to rape, a violation of section 11—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 11—1), and after a jury found him guilty of aggravated kidnaping, a violation of section 10—2 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 10—2). The taking of defendant's guilty plea and his trial were presided over by different judges who conducted a joint sentencing hearing pursuant to an agreement between the State and defendant. After recessing for a conference among themselves, the judges imposed separate sentences which they individually explained before adjourning the hearing.

Briefly, the facts giving rise to the instant offenses are as follows: on February 20, 1977, at approximately 4 a.m., the defendant and William McClain followed a young woman who was attempting to drive home after work. One of the young men pulled his automobile in front of the victim's and stopped so as to permit defendant to approach the victim for the purpose of requesting assistance. When the victim opened her window, the defendant drew a bayonet and forced his way into the vehicle. Defendant then proceeded to drive the vehicle as he directed the victim to place a blindfold over her eyes. Later, the victim and defendant entered the other vehicle which was then being driven by McClain. Defendant took over the driving chore as the victim sat on the front seat between her abductors. She was ordered to remove her clothing and defendant ordered her to lie down on the back seat where he raped her after McClain began driving. When McClain and the defendant exchanged places, McClain also raped the victim.

On June 21, 1977, the defendant pleaded guilty to the rape charge. On June 30, 1977, he was convicted of the aggravated kidnaping charge.

On appeal, the defendant contends: (1) that the joint sentencing procedure somehow prejudiced him; (2) that he was improperly convicted for two offenses based on the same physical act; (3) that the aggravated kidnaping offense was not proved beyond a reasonable doubt; (4) that the instructions given to the jury at the aggravated kidnaping trial were defective; and (5) that the sentences imposed were excessive.

Section 5—4—1(a), (b) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—4—1(a), (b)) provides:

"(a) After a determination of guilt, a hearing shall be held to impose the sentence. At the hearing the court shall:

(1) consider the evidence, if any, received upon the trial;

(2) consider any presentence reports;

(3) consider evidence and information offered by the parties in aggravation and mitigation;

(4) hear arguments as to sentencing alternatives; and

(5) afford the defendant the opportunity to make a statement in his own behalf.

(b) All sentences shall be imposed by the judge. The judge who presided at the trial or the judge who accepted the plea of guilty shall impose the sentence unless he is no longer sitting as a judge in that court. Where the judge does not impose sentence at the same time on all defendants who are convicted as a result of being involved in the same offense, the defendant or the state's attorney may advise the sentencing court of the disposition of any other defendants who have been sentenced." (Compare Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—4—1 (revision eff. Feb. 1, 1978).)

Also, in *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, 359-60, 336 N.E.2d 1, 5, our supreme court stated: "[T]he present Constitution is silent as to the number of judges required for the determination of a proceeding in the circuit court. This court, however, has consistently held that circuit (and superior, as classified under the previous constitution) court judges occupy independent offices with equal powers and duties, and that they cannot and do not act jointly or as a group. [Citations.]"

On August 6, 1968, the House of Delegates of the American Bar Association approved the following standards pertaining to sentencing alternatives and procedures:

"5.2 Multiple offenses: consolidation for sentencing; pleading to prior offenses.

(a) To the extent possible, all outstanding convictions should be consolidated for sentencing at one time. All outstanding charges should be disposed of promptly and should likewise be consolidated for sentencing at one time. Charges filed after sentencing should be promptly prosecuted. Any sentence imposed on an offender already under sentence for another offense should be integrated with the prior sentence.

\* \* \*

7.1 Sentencing council.

In all courts where more than one judge sits regularly at the same place, and wherever else it is feasible, it is desirable that meetings of sentencing judges be held prior to the imposition of sentence in as many cases as is practical. The meeting should be preceded by distribution of the presentence report and any other documentary information about the defendant to each of the judges who will

participate. The purpose of the meeting should be to discuss the appropriate disposition of the defendants who are then awaiting sentence and to assist the judge who will impose the sentence in reaching a decision. Choice of the sentence should nevertheless remain the responsibility of the judge who will actually impose it. 7.2 Sentencing institutes.

Provision should be made in every state for the convening of sentencing judges from time to time for the purpose of holding institutes or seminars to discuss problems related to sentencing. The particular goal of such proceedings should be to develop criteria for the imposition of sentences, to provide a forum in which newer judges can be exposed to more experienced judges, and to expose all sentencing judges to new developments and techniques. Prosecutors, members of the defense bar, appellate judges, and corrections and releasing authorities should be encouraged to participate in such proceedings in order to develop a better understanding of their roles in the sentencing process." ABA Standards on Sentencing Alternatives & Procedures §§5.2(a), 7.1, 7.2 (Approved Draft 1968).

Our research indicates that the joint sentencing hearing conducted in the instant case is unique in the history of Illinois courts, although the legislature once unsuccessfully attempted to authorize three-judge panels to determine whether the death penalty should be imposed. (Section 5—8—1A of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A).) In *Cunningham*, section 5—8—1A was declared unconstitutional by our supreme court. In *People v. Link* (1936), 365 Ill. 266, 6 N.E.2d 201, three judges sat *en banc* at a conspiracy trial involving charges of corruption among trustees and employees of the Sanitary District of Chicago. One judge was a judge of the Circuit Court of Cook County and *ex officio* judge of the Criminal Court of Cook County. The other two were judges of the Superior Court of Cook County and *ex officio* judges of the Criminal Court of Cook County. In *Link*, the supreme court affirmed the convictions and sentences imposed by the circuit court saying: "Obviously, improper organization of a judicial tribunal may be waived. While this procedure is not to be commended or desired yet the criminal court of Cook County had jurisdiction of the subject matter of the particular proceeding and of the parties. The contention that the judgments, sentences and fine are void is without merit." (365 Ill. 266, 291, 6 N.E.2d 201, 212.) We also note that a sentencing council procedure similar to that set forth in ABA Standard 7.1 has been utilized for a number of years in the United States District Court for the Northern District of Illinois. Parsons, Aids in Sentencing, 35 F.R.D. 423, 433-34 (1964).

In the instant cases, the defendant admits that he consented to a single sentencing hearing presided over by the judges sitting in the two causes involving his alleged crimes, but he contends that it was reversible error for the judges to confer among themselves before imposing sentence. The record before us, however, does not reflect that either judge took anything less than full responsibility for determining the sentence for the case over which he presided. The record also does not reflect that the judges abused their discretion in imposing sentence or that the defendant was prejudiced by their conference. If we were to rule that sentencing judges should not confer with other judges, we would be issuing an unenforceable order requiring that they exercise their sentencing discretion in a vacuum. Such an order would be contrary to the current practices in many of our circuits and, in our opinion, would be unwise because it would frequently result in the imposition of widely disparate sentences on similarly situated defendants. It would be tantamount to saying, "Mr. Trial Judge, avoid independent, wholesome, inquiry since it may persuade you."

The judges' consultation in the instant case is similar to a form of continuing education of judges. Attendance by judges at The National Judicial College is encouraged by lawyers and laymen alike. At such a seminar, each judge brings his unique problems and concerns in addition to his suggestions for their solution. Full responsibility for the imposition of sentence in a given case remains with the presiding judge, but it is hoped that his participation in the continuing education program will permit him to benefit from valuable knowledge acquired by more experienced judges. J. Kress, L. Wilkins & D. Gottfredson, *Is the end of judicial sentencing in sight?* 60 Judicature 216, 221-22 (1976).

The sentencing hearing mandated by statute is intended to afford to the sentencing judge a background of information that will enable him to impose a just and meaningful sentence. Much of the information flowing to the judge from the presentence report is of a hearsay nature. If recommendations of the prosecutor and defense counsel are received, as is frequently done, they necessarily are based upon the defendant's criminal involvement as it appears in his criminal record. Their analysis and evaluation of that "rap" sheet reflects the philosophies of those officers. At the sentencing hearing, witnesses holding different opinions express their views as to the kind of a sentence that should be imposed. Frequently the judge is bombarded with gratuitous recommendations as to the appropriate disposition. The judge may, in formulating a sentence, do extensive reading in the disciplines of penology, psychology, and psychiatry. His inquiry may lead him to the sentencing formulas outlined in the Glueck tables. He may confer with the probation officer to further search out the nuances of the officer's report. Many of these activities are

conducted outside of the courtroom, off the record, and without the knowledge of the parties. To restrain these activies on the part of a conscientious trial judge would do an immeasurable disservice to the judicial process.

■■ Consultation with judges sitting in the same circuit can have the same beneficial effect if it is responsibly conducted with due regard to the preservation of the presiding judge's independence and discretion. In this case we cannot say it was inappropriate or improper.

■■ In *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845, our supreme court stated: "We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." In the instant case, defendant has been convicted of rape and aggravated kidnaping which, clearly, are not lesser included offenses of each other. In *People v. Richardson* (1977), 50 Ill. App. 3d 550, 558-59, 365 N.E.2d 603, and *People v. Carroll* (1977), 49 Ill. App. 3d 387, 395, 364 N.E.2d 408, the courts held that defendants could be convicted and sentenced for rape and aggravated kidnaping on the authority of *King*. Accordingly, we hold that the trial court in these cases did not err in entering judgments of conviction and sentences for rape and aggravated kidnaping.

■■ Defendant contends that the State failed to prove beyond a reasonable doubt that he intended to secretly confine the victim against her will and, therefore, that he could not be convicted for the aggravated kidnaping offense. Our supreme court, however, has consistently rejected the notion that there can be no secret confinement in an automobile moving upon the highway. (*People v. Canale* (1972), 52 Ill. 2d 107, 119, 285 N.E.2d 133; *People v. Bishop* (1953), 1 Ill. 2d 60, 64, 114 N.E.2d 566.) Also, specific intent need not be proved by words of intention but may be inferred from the circumstances surrounding the commission of an act by the defendant. (*People v. Lyons* (1974), 26 Ill. App. 3d 193, 199-200, 324 N.E.2d 677.) Here, therefore, proof that the victim was indeed confined and transported in her own and another's automobile as the cars were driven by the defendant and McClain is sufficient proof of defendant's specific intent to secretly confine the vicitm.

■■ At defendant's aggravated kidnaping trial the following instruction was given to the jury: "A person who kidnaps another commits the crime of aggravated kidnapping when he commits rape upon the victim." (People's Instruction No. 10.) This instruction is identical to Illinois Pattern Jury Instructions, Criminal, No. 8.04 (1968) (hereinafter cited as IPI Criminal) except that the word "rape" was inserted in lieu of "a felony." The Committee Note to IPI Criminal No. 8.04 states that the

name of the appropriate felony should be inserted as was properly done in the instant case. Defendant also contends that the court erred in not giving his tendered instruction number 3 which reads:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of a defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence." (IPI Criminal No. 3.02.)

Had the court been asked to, it should have given only the first paragraph of IPI Criminal No. 3.02. The second paragraph should have been given only if the proof of defendant's guilt was entirely circumstantial. Here, however, direct evidence of defendant's involvement in the crime was presented as a part of the victim's testimony. The issue concerning the propriety of the court's refusal to give all of IPI Criminal No. 3.02 was, therefore, waived when counsel failed to tender a proper instruction or to request leave to permit the preparation of such an instruction. See *People v. Tannahill* (1976), 38 Ill. App. 3d 767, 773, 348 N.E.2d 847.

Supreme Court Rule 451(c) (58 Ill. 2d R. 451(c)) provides that section 67 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 67) shall govern the giving of criminal instructions. Section 67(2) provides: "The originals and copies of all instructions, whether given, modified or refused, shall be filed as a part of the proceedings in the cause." Our review of the record and its *praecipe* discloses that all of the tendered instructions were not filed as a part of the proceedings in this cause, although some or perhaps even all of the tendered instructions were taken down by the court reporter and included in the trial transcript. While we have discussed the merits of the instructions' issue in this case, we have done so only for its obvious teaching value to counsel. We hold, however, that counsel's failure to follow the procedures outlined in section 67(2) of the Civil Practice Act and in Supreme Court Rule 451 waived any alleged errors in the instructions. *People v. Looney* (1977), 46 Ill. App. 3d 404, 408, 361 N.E.2d 18; *People v. Welch* (1961), 22 Ill. 2d 558, 561, 177 N.E.2d 160.

■■ Defendant was sentenced to concurrent 9- to 18-year terms of imprisonment and he contends that those sentences are excessive in light of defendant's prior history. We note, however, that the sentences imposed are within the statutory limits and that the record does not reflect that the sentencing judges abused their discretion. As we have often done, we again decline to tinker with sentences imposed by the

circuit court unless there is evidence that the court abused its discretion. *People v. Honn* (1977), 47 Ill. App. 3d 378, 383, 362 N.E.2d 90, 94; *People v. Hines* (1976), 44 Ill. App. 3d 204, 206, 357 N.E.2d 884, 885.

For the foregoing reasons, we affirm defendant's convictions and the sentences imposed thereon.

Affirmed.

MILLS and TRAPP, JJ., concur.