**STATE of Missouri, Respondent,**

v.

**Samuel L. STEWART, Appellant.**

**No. WD 31846.**

Missouri Court of Appeals,
Western District.

March 30, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 1981.

Application to Transfer Denied
June 8, 1981.

Carson, Monaco, Coil, Riley & McMillin, P. C., R. L. Veit, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

PRITCHARD, Presiding Judge.

Appellant was by the verdict of a jury convicted of kidnapping a Class B felony charged (Count I) under § 565.110 RSMo 1978, and of rape, also a Class B felony charged (Count II) under § 566.030, RSMo

1978. The jury fixed the punishment at fifteen years imprisonment on each charge. The trial court, upon its finding that appellant was a persistent offender, sentenced him to fifteen years on Count I and thirty years on Count II, to run concurrently but consecutively to a previous sentence imposed in Jackson County, Missouri.

■ The first contention advanced by appellant is that the court erred in overruling his motion to dismiss the information because he had been discharged after preliminary hearing on the rape charge on June 1, 1979. A second information again charging the rape and also kidnapping was filed July 12, 1979. Appellant says in his brief that he was called before the same associate circuit judge for the second preliminary hearing. Appellant says that this situation deprived the trial court of jurisdiction. Respondent, however, has filed in this court a supplemental legal file showing that there were different associate circuit judges presiding at the preliminary hearings: apparently Associate Circuit Judge Patrick Horner presided over the June 1, 1979, preliminary hearing at which appellant was discharged on the rape charge. Then, upon the second charges being filed, Judge Horner disqualified himself and Associate Circuit Judge Joan Pinell was designated by the presiding judge of the circuit court to hold the preliminary hearing, which she did, and appellant was bound over to the circuit court for trial. The matter is controlled by *State ex rel. Brown v. Duggins*, 601 S.W.2d 11 (Mo. banc 1980), wherein the court clarified its earlier decision in *State v. Thomas*, 529 S.W.2d 379 (Mo.1975), by adding to and adopting the full quote from 21 Am.Jur.2d Criminal Law, § 450, pp. 450–452, that the discharge after preliminary examination " '*does not bar the filing of a new complaint with another magistrate * * *.*' " Note also the quote in the *Duggins* case from *United States ex rel. Rutz v. Levy*, 268 U.S. 390, 45 S.Ct. 516, 69 L.Ed. 1010 (1925), "Under state law it has uniformly been held that the discharge of an accused person upon a preliminary examination for want of probable cause constitutes no bar to a sub-

sequent preliminary examination before another magistrate." In accordance with these authorities, appellant's Point I is overruled.

■ By Point II, appellant says that the trial court erred in submitting instructions to the jury upon both kidnapping and rape because the kidnapping was established by the proof of the same facts as rape, and the kidnapping occurred in the same continuing course of conduct as rape. He says the submissions were contrary to §§ 556.041(1) and (4), and 556.046(1), because kidnapping was established by proof of the same facts as rape and the kidnapping occurred in the same continuing course of conduct as rape; that the conviction for both offenses was contrary to § 565.110 because kidnapping is not meant to cover confinement or movement incidental to the commission of another offense which does not add any additional danger to that already present in the principal crime; and that the conviction of both offenses violated appellant's rights under Const. Mo. Art. I, § 19, and the Fifth Amendment of the U. S. Constitution, both of which prohibit punishing a person twice for the same offense. § 565.110 provides, in pertinent parts here, "1. A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his consent for a substantial period, for the purpose of * * * (4) Facilitating the commission of any felony or flight thereafter; or (5) Inflicting physical injury on or terrorizing the victim or another. * * *." The interrelated subpoints will be treated together.

At about 10:45 p. m., on April 29, 1979, the prosecutrix went to pick up her mother at the Callaway Hospital. Her mother worked the 3:00 p. m. to 11:00 p. m. shift. The prosecutrix parked the car about four spaces from the front door of the hospital and sat listening to the radio and reading a book. Then somebody grabbed her around the neck from the driver's side and told her to scoot over and be quiet and she would not get cut. The man had an object, which felt similar to and which she took to be a knife, against her throat. He backed the car out and started down the street at which time the prosecutrix was lying down with her head on his leg. He told her to get out of the car at a place she knew was across from Carver School, where they went to a little wooded area, where he told her to get down on her knees and take off some clothing. She complied, taking off her jacket and blouse. There were voices in the area, so he decided to leave and they got back in the car and left, she with her head again on his leg and he had the object still at her throat. They went down a gravel road, stopped and got out into a kind of ditch. They had driven for less than a half an hour. The man then decided to leave, and they drove somewhere else and stopped. At this point the man had the prosecutrix lie down on the seat and take off her jeans and everything. At this time the rape occurred. The prosecutrix was unable to identify appellant as the man who raped her either in a lineup or at trial.

§ 556.041 provides as to a limitation on conviction for multiple offenses: "When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if * * * (4) the offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses."

The matter of separate and dual offenses is discussed in 1 Am.Jur.2d Abduction and Kidnapping, § 9, p. 165, and this statement is made: "It seems to be the general rule that the mere fact that an abduction or kidnapping is committed for a purpose which if carried out or attempted to be carried out, would make the defendant guilty of another crime does not save the perpetrator from guilt of both crimes." Note the annotation on this section, 17 A.L. R.2d 1003. In the pocket part of the foregoing Am.Jur.2d citation are the following cases which bear on the issue.

In *People v. Keeth*, 63 Mich.App. 589, 234 N.W.2d 717 (1975), the defendant was charged with kidnapping and indecent liberties. The facts were that defendant picked up the victim on a major highway, refused to take her home, assaulted her with a gun and secured her with handcuffs, then drove for about an hour to a secluded spot. The court said, 234 N.W.2d page 719, "Certainly this movement would have greatly increased the threat of danger to the victim. We find therefore that this kind of asportation would not have been merely incidental to the other crime charged. [Indecent liberties.]"

In *Stalley v. State*, 91 Nev. 671, 541 P.2d 658 (1975), the victim, assenting to defendant taking her home from her stalled car, objected when he went in a different direction. He pointed a small caliber revolver at her and later a knife and demanded she undress. He stopped and sexual intercourse occurred, after which she unsuccessfully attempted to escape, and he resumed driving. Finally, she was able to escape by jumping from the car and she hid in the desert. Defendant was convicted of rape and kidnapping, and contended that the kidnapping conviction must be annulled since it was but a subsidiary to the crime of rape. The court distinguished *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965), where it was said that the kidnapping involved a contemporaneous robbery, and *People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969), where it was ruled that the movements of the victim were merely incidental to the commission of the robbery, and did not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself, the court saying, 541 P.2d page 661, "Here, after the initial asportation and consummation of rape, Stalley resumed driving his car with the victim detained therein against her will and continued to threaten her. At that point, if not before (a matter on which we express no opinion) a separate crime was committed, and the risk of further harm to the victim over and above that existing in the crime of rape itself was present. The con-

viction for second degree kidnapping may stand."

In *People v. Hardesty*, 67 Mich.App. 376, 241 N.W.2d 214 (1976), the court rejected the argument that the kidnapping was merely incidental to the rape, saying, page 215, "Movement that adds either a greater danger or threat to the victim beyond that inherent in the crime of intended perpetration constitutes legal asportation, * * *." The *Hardesty* court noted that the element of asportation in the crime of kidnapping is not satisfied where the movement of the victim is merely incidental to the commission of another underlying lesser offense (which are the basic holdings of *People v. Daniels* and *People v. Levy*, supra).

In *Cherry v. State*, 539 S.W.2d 51, 53 (Tenn.Crim.App.1976), the court held that although the convictions of kidnapping and assault and battery with intent to rape occurred in a single criminal episode they were not identical offenses and different evidence was required to prove each offense under *State v. Black*, 524 S.W.2d 913 (Tenn. 1975), "[k]idnapping requires asportation which is not found in assault and battery with intent to commit rape. Both convictions can stand under these principles."

*State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338, 348 (N.C.1978), had a kidnapping statute similar to § 565.110, supra. The defendant contended that the kidnappings were not "'true kidnappings' but were merely incidental to the commission of the crimes against nature." The court held that the act of binding the victims' hands and threatening them with a weapon showed a purpose to facilitate the commission of the felony of crime against nature. This having been done, the kidnapping was complete, irrespective of whether the contemplated crime against nature ever occurred. See also *State v. Banks*, 295 N.C. 399, 245 S.E.2d 743 (1978).

Appellant concedes that *State v. Johnson*, 549 S.W.2d 627 (Mo.App.1977), reached the opposite result to that for which he contends: that kidnapping should be limited to situations where the confinement or move-

ment makes the behavior specifically terrifying or dangerous. He contends, however, that the *Johnson* case, and *State v. Gormon*, 584 S.W.2d 420 (Mo.App.1979), were both tried under the old kidnap law which did not embody the approach taken by the new law, § 565.110. Although § 565.110 does change the law of kidnapping, to accord substantially with § 212.1 of the Model Penal Code, appellant does not explain how that change helps him under the facts of this case. The situations in *People v. Levy* and *People v. Daniels*, as explained above in the *Hardesty* citation, and again touched upon in the *Johnson* case, supra, page 632, are just not present here. The victim here was in her car in a hospital parking lot. Appellant entered her car with a threat, drove off, with her lying down, to several locations, all with the obvious purpose of facilitating his accomplishment of the felony of rape. He detained her about an hour. The driving away to an isolated area, holding some object against the victim's neck, substantially increased the risk of harm or danger over and above that which would have been present had the rape occurred in the hospital parking lot. The offenses were separate, not continuing within the contemplation of § 556.041. The kidnapping was not, under the facts, incidental to the rape. No opinion need be expressed herein as to whether under different factual situations the rules of the *Levy* and *Daniels* cases ought to be applied. Since the offenses were separate, no right the appellant had not to be punished twice for the same offense, was infringed. Kidnapping is not a lesser included offense to that of rape under § 556.046(1) for both have different elements. "By definition, all legal and factual averments necessary to sustain a conviction for a lesser included offense must also be elements of the greater offense." *Hayes v. State*, 501 S.W.2d 508, 511[6, 7] (Mo.App.1973), and cases cited. See also *People v. Miller*, 58 Ill.App.3d 1019, 16 Ill. Dec. 343, 374 N.E.2d 1118 (Ill.App.1978), where it was held that rape and aggravating kidnapping are not lesser included offenses of each other, and defendants could be convicted of both offenses where they abducted the victim in her automobile, drove her to a remote area and raped her. In accordance with the above authority and the facts of this case to which §§ 556.041 and 565.110 may be applied, Point II is overruled in its entirety.

■ As noted, the prosecutrix was unable to identify appellant as the person who kidnapped and raped her. The sole evidence was a fingerprint identified as appellant's which was taken from the horn rim of the steering wheel. He says that the court erred in not granting his motion for judgment of acquittal because a guilty verdict based on circumstantial evidence must be consistent with his guilt and not be consistent with any reasonable theory of innocence. The argument is that the prosecutrix testified that she washed the car a few days before the crimes were committed; it was her father's car, and he may have used it during that period. The state's expert fingerprint witness testified another latent fingerprint taken from the vehicle was submitted to him, but he was unable to identify it, and eight latent prints had been submitted. The state did not call the father to testify that he had not given permission to be in the vehicle in the prior several day period, or that he had not left it where appellant had opportunity to be in it for some other purpose. Therefore, appellant says, if the state were able to identify the other latent print as belonging to someone else, that person could be convicted of the same offense. The argument is specious. Taking the evidence in its light most favorable to the state as well as the legitimate inferences, the jury could infer from the identified fingerprint that it was appellant who abducted the prosecutrix, and in so doing, left his fingerprint on the horn rim as he drove the car. See *State v. Franco*, 544 S.W.2d 533, 534[1–4] (Mo.banc 1976), quoting *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970), " '[i]n a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence[;] . . . the mere existence of other possible hypothesis is not enough to

remove the case from the jury.' " There exist these additional circumstances: the prosecutrix identified a pair of tortoise-shell glasses which had been taken from appellant upon his arrest as being similar to the glasses worn by her assailant. Furthermore, upon being interrogated, appellant gave the police a statement that he did not know the victim nor had he ever seen her, and he had never been in her car. (Thus, the possibility, as argued, that his fingerprint was placed on the horn rim *legitimately* could, in the jury's determination, have been refuted.) In these cases, convictions were affirmed upon the sole evidence of fingerprints as being circumstantially sufficient: *State v. Deutschmann*, 392 S.W.2d 279, 282 (Mo.1965), where defendant's fingerprint was found on a coin box of a coin-operated pool table in a burglarized V.F.W. recreation room; *State v. Thomas*, supra, where defendant's prints were found on a piece of glass left in a hallway from a broken-out front apartment door. It was noted in the *Thomas* case that if the judge were to direct acquittal whenever in his opinion, the evidence failed to exclude every hypothesis than that of guilt, he would pre-empt the functions of the jury. Point III, raising the submissibility of the state's case, is overruled.

■ By Point IV, appellant contends he was improperly not permitted to cross-examine the prosecutrix on the issues of her interest in the case and her bias and prejudice toward the parties. The matter came up thus: After testifying on the first preliminary examination on June 1, 1979, she read a newspaper article about the circumstances under which she gave her testimony, and as a result, she got mad. Defense asked her what it was in the article that made her mad. The state's objection was sustained. Defense counsel then stated to the court that on the second preliminary examination, the witness testified that she read an article about the defendant being discharged and it made her mad concerning counsel's comment about when the fingerprint could have been placed in the car, and it was only then that she remembered she had washed the car two days before. "I

think the jury needs to know that I think it's proper impeachment to show perhaps she has some bias against this defendant." The court then again sustained the objection. The prosecuting witness then testified that it was after the first preliminary examination that she remembered washing the car some days before the crimes; that she had not been asked about that matter on the first preliminary examination; and she told the prosecutor about it for the first time thereafter.

As appellant says, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), requires that under the confrontation clause of the Sixth Amendment of the U.S. Constitution, a defendant be allowed to cross-examine the state's witnesses on the issues of bias and interest. In *Davis*, however, the witness, Green, was not a victim. As held, his cross-examination as to his status as a juvenile probationer despite Alaska's interest in preserving his anonymity as a juvenile offender should have been permitted, because it would enable counsel "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." 94 S.Ct. 1111. The witness, Green, as a juvenile offender, might have testified as he did to protect himself from being a suspect in the burglary there involved. Also, in *United States v. Alvarez-Lopez*, 559 F.2d 1155 (9 Cir. 1977), the Government's star witness was not a victim. Thus, the state's argument here that the prosecutrix, as a victim, had a natural and inherent bias and prejudice against appellant as her assailant has merit, and that matter bears upon the trial court's exercise of discretion in not permitting further inquiry as to why the prosecutrix was "mad". In *State v. Pigques*, 310 S.W.2d 942 (Mo.1958), it was held to be reversible error where the trial court unduly circumscribed the defendant in his interest and animus in cross-examining the prosecuting witness in a burglary case. The examination related to a reason to have defendant locked up, and arrested, and that defendant owed money to the witness.

Clearly the inquiries in *Pigques* went to the credibility of the witness, who was not a victim of the burglary charge. The court set forth at page 947[7, 8] the liberal rules permitting cross-examination of a witness, and "much is left to the discretion of the trial court as to how far the inquiry may go into the details of the difficulty, disagreement, or other transaction which caused the hostility, prejudice, or ill feeling. [Citing cases.]." See also *State v. Glass*, 554 S.W.2d 426, 429[4] (Mo.App.1977). Furthermore, the matter of the prosecutrix not testifying at the first preliminary hearing that she had, previous to the kidnapping and rape, washed the vehicle, then got "mad" on reading a newspaper article about that hearing, then remembered that she had indeed washed the car, to which she testified at the second preliminary hearing, was fully gone into before the jury. Her anger, which could relate to and be in addition to her basic inherent bias and prejudice against appellant by reason of being a prosecutrix, was fully developed. In these circumstances there appears to be no clear abuse of the trial court, and this court will not therefore interfere. *State v. Neal*, 526 S.W.2d 898, 901[1–4] (Mo.App.1975). Point IV is overruled.

Exhibit No. 8 was a photographically enlarged copy of appellant's fingerprints found on the horn rim of the vehicle. Appellant says Exhibit No. 8 was not furnished to him pursuant to his request for discovery under Rules 25.32 and 25.33, and therefore he was prejudiced because specific points of comparison, outlined, were on the enlarged photographs, and he did not have an opportunity to have his expert compare the points. The state did furnish appellant with the negatives. Exhibits 5 and 7, along with notice that they would be enlarged for the purpose of charting the comparison points were given to appellant's counsel. Quite apparently, appellant made no attempt to enlarge Exhibits 5 and 7, and requested no continuance under Rule 25.16 to allow his expert, if he desired to use one, to examine Exhibit No. 8 for the purpose of comparison. The ruling as to the inclusion as evidence of Exhibit No. 8 not produced

pursuant to discovery was within the discretion of the trial court. *State v. Davis*, 556 S.W.2d 45, 47[4, 5] (Mo.banc 1977), and under that case and the facts presented (that appellant had available the negatives of the points for his use in further comparison), no fundamental unfairness or prejudice to the substantial rights of appellant existed. Point V, raising this issue, is overruled.

Appellant's Point VI is that the trial court erred in allowing Exhibits 5, 7 and 8 (the fingerprint negatives and the enlargement thereof) into the jury room for the examination by the jury. No reason is assigned in the point why the trial court so erred, but appellant argues that the exhibits were the subject of expert testimony, therefore the trial court abused its discretion in allowing the jury access to the exhibits because the jury was without the skill and expertise correctly to interpret them. An expert had testified as to the exhibits, and the exhibits were merely corroborative of that testimony. The jury apparently chose to believe the expert testimony, and any of its disbelief could only come from a contrary conclusion from an examination of the exhibits, which would have been to appellant's advantage. In any event, it was within the trial court's discretion to allow the jury to have the exhibits. *State v. Smith*, 563 S.W.2d 162, 163 (Mo.App.1978). Point VI is overruled.

The judgment is affirmed.

All concur.